Hoffman vs. City of St. Louis.

HOFFMAN vs. CITY OF ST. LOUIS.

1. The power conferred on the City of St. Louis, in regard to the grading of streets, lanes and avenues, is a continuing power, and is not exhausted upon the first use, but must remain to be exercised, as the judgment of the corporate powers may deem most conducive to the welfare and prosperity of the city. When, therefore, the grade of a street has been fixed, and improvements made in conformity to it, it may be altered by the corporation, and no action lies for the injury the alteration may occasion: (Gurno vs. The City of St. Louis, 12 Mo. Rep. 414; Taylor vs. The City of St. Louis 14 Mo. Rep. 20.)

R. M. FIELD & JAS. McMARTIN, for appellant.

I. The court is referred to the following cases in which corporations have been held liable for injuries committed in the exercise of their unquestioned powers.

In Lead Company vs. Rochester, 3 Comstock Rep. 463, the city was holden liable for the unproper construction of a sewer.

So in Hay vs. —— Company, and in Tremain vs. —— Company, 2 Comst. Rep. 159 and 163, where a Canal Company, in carrying out the object of its incorporation, caused an injury to an individual, was held responsible for the actual damage.

In Ross vs. City of Madison, 1 Smith's Rep. 98, it is said, that corporations, like individuals, are liable for the negligence and unskilfullness of agents.

In —— vs. Wilmington, 9 Iredell Rep. 73, it was decided, that municipal corporations are liable for the unskilfull grading of streets.

In Akron vs. McComb, 18 Ohio Rep. 229, it was held, that a town was liable for digging down a street in front of the plaintiff's house.

II. But the claim of the plaintiff, in this case, may be sustained upon the principle admitted by this court, in the case of Gurno vs. St. Louis, 12 Mo. Rep. 414, that a municipal corporation is liable for all illegal acts done under its authority.

There was no authority in the corporation, to alter the established grade of the street in front of plaintiff's house. There, certainly, is no such authority conferred in terms by the charter, and considering its charter and its manifest liability to abuse, it ought not to be conceded as arising by implication: See City Charter of 1843, article 3, section 1, sub-division 8.

The cases relied on by the respondents' counsel, do not seem to be altogether applicable.

In Callender vs. Marsh, 1 Pick. 431, no grade had been established by public authority, previously to the acts complained of.

In Furman, 17 Wend. 649, the point did not arise in the case, and consequently, the strong language of the Judge, in delivering the opinion, is not to be quoted as authority.

In Goyler vs, Georgetown, 6 Wheaton, the court lay stress on the particular phraseology of the charter, which was "to pass ordinances for the graduation of the streets, as they shall deem

proper." The legislative power thus conferred, without limitation, was held to be a continuing one.

## J. C. RICHARDSON, City Counsellor.

I. The 8th clause of the 2nd section, article 3, of the charter of 1843, confers upon the city the power to grade streets, avenues, lanes and alleys. It is a legislative power, for the exercise of which, the defendant cannot be made responsible, and any inconvenience or loss to an individual, would be *damnum absque injuria*. In the case at bar, Clark avenue was a public highway, and the agreed case expressly negatives the imputation, that the work was negligently or wantonly done. So that the naked question is presented, whether a municipal corporation is liable for damages consequential upon the grading of a street. If any question ought to be considered as settled, this is one, for it has recently been considered by this court in two cases, Gurno vs. The City of St. Louis, 12 Vol. Mo. Rep. 414, and Taylor et al. vs. The City, 14 Vol. Mo. Reports 20.

These cases are well sustained, not only by sound reasoning. but by authority: Harman vs. Tarpenden et al., 1 East 562; ~utton vs. Clark, 6 Taunton 42; The Governor & Co., &c., vs. Meredith et al., 4 Term 794; Green vs The Borough of Reading, 9 Watts 382; Mayor, &c. vs. Randolph, 4 Watts & Serg. 516; Callender vs. Marsh, 1 Pick· 418; Wilson vs. Mayor of New York, 1 Denio 597; 6 Wheat. 593.

If the defendant is made liable in this case, it will be difficult to say on what principle it ought to be done, and to prescribe a rule and measure of responsibility, which will not become mischievous in its operation, and utterly defeat the purpose for which municipal corporations were created. The principle on which the liability is established, cannot be controlled by the amount of damage a party may sustain, for a man who is injured to the amount of ten dollars, ought to have his action as well as one who is injured to the amount of a thousand. Such a liability would be disastrous, and the city could not pave, grade or repair a single populous street, without being ruined; for, the repairing of a gass lamp, the laying of a water pipe, or the re-setting of a pavement, would obstruct the side walk, and injure the merchant on the street, by driving away his customers. Where would the liability cease?

II. The power to· grade a street implies the power to alter the grade; it is a continuing power, which is not exhausted when it is once exercised.

In the matter of Furman Street, 17 Wendell 648, Judge Bronson delivering the opinion of the court, says: "The authority to regulate, level and pave streets, is in its nature a continuing power, or one which does not cease the moment it is once executed. It was given for the purpose of promoting the public safety and convenience; and although the power should never be exercised capriciously, or, upon light considerations, I entertain no doubt that the corporation may change the level of this or any other street, even after it has been paved or otherwise prepared for public use: p. 667-8.

In Callender vs. Marsh, 1 Pick. 431, the court says: "Those who purchase house lots bordering upon streets, are supposed to calculate the chance of such elevations and reductions, as the increasing population ·of· a city may·require, in order to render the passage to and from the several parts of it safe and convenient; and as their purchase is always voluntary, they may indemnify themselves in the price of the lots which they buy, or take the chance of future improvements, as they shall see fit."

Goszler vs. the Corporation of Georgetown, 6 Wheat. 593, this case is directly in point. The ordinance establishing the grade in the first instance, declared, that. it should forever thereafter be .considered as the true graduation, and be binding upon the corporation and all other persons whatever.

RYLAND, J., delivered the opinion of the court.

The city of St. Louis passed an ordinance, on the 14th September, 1843, by which it fixed the grade of Clark avenue—a public street of said city.

The appellant became the proprietor of a lot on Clark avenue, 120 feet in front, and erected two dwelling houses along the front of his lot, conforming to the grade as established by the forementioned ordinance, and having their lower stories level with the ground.

On the 19th of August, 1851, the city passed an ordinance changing the grade of Clark avenue, and agreeably to its provisions, proceeded to fill up the street in front of appellant's dwelling houses, so as to render them of materially less value. The last mentioned ordinance was passed on petition of many of the lot owners on the avenue, and without any actual intention to injure the appellant. An agreed case, containing the forementioned facts, was submitted by the parties to the St. Louis court of common pleas. That court gave judgment for the city, and Hoffman brings the case to this court by appeal.

The principles involved in this case, have heretofore, for the most part, been settled by this court, in the case of Gurno vs. the City of St. Louis, 12 Mo. Rep. 414, and Taylor, et al. vs. the City of St. Louis, 14 Mo. Rep. 20. So far, therefore, as these cases are applicable to the present case, they will control it.

The appellant however, contends, that there is a manifest distinction between these cases and the one now before the court. In the present the injury arises not from the exercise by the city, of the power to grade the streets, &c., but from the exercise of a power to change and alter the grade of a street, after having once fixed it. It is the alteration of this grade that now causes the injury, not the mode and manner of making it originally. This alteration materially lessens the value of the dwelling houses first erected in conformity with the then established grade of the avenue.

The question resolves itself into this: Does the power to grade streets, &c., become exhausted when once exercised, or is it a continuing power, in the hands of the corporation, to be exercised as the judgment of that body may determine, for the good of the whole?

The charter of the city contains the following clause: (Art 3, sec. 2, eighth clause of the section:) "To open, alter, abolish, widen, extend, establish, grade, pave or otherwise improve, clean and keep in repair, streets, avenues, lanes and alleys; but the Mayor and city council shall not establish nor open a street, lane, avenue or alley, through the ground

lying and being situate between North street and Eleventh street, and Washington avenue and Green street, without the written assent of the proprietors of the St. Louis University, so long as the building now used as a University remains erected thereon."

It is the opinion of the court, that the power hereby conferred upon the city, in regard to the grading of streets, lanes and avenues, is a continuing power, and is not exhausted upon the first use, but must remain to be exercised not with wanton caprice, but as the judgment of the corporate powers may deem most conducive to the welfare and prosperity of the city.

It is lawful for the city, by its Mayor and council, "by ordinance, to alter, abolish, widen, extend, establish, grade, pave or otherwise improve, clean and keep in repair streets, avenues, lanes and alleys."— This is not only a general and ample power, but from its nature, must be a continuing power. They may "alter a street;" how? By raising up or by cutting down, or by lateral variation. What is to hinder the alteration of the grade?

In the matter of opening Furman street, in the City of Brooklin, 17 Wend. 649, it was decided, that the power of a corporation, of a village or city "to regulate, level and pave streets," is a continuing power, and the level of a street, although once adopted, may be changed, even after it has been paved, or otherwise prepared for public use.

The language of the court in this last case is, "That the authority to regulate, level and pave streets is, in its nature a continuing power, or one that does not cease the moment it is once executed. It was given for the purpose of promoting the public safety, and convenience, and although the power should never be exercised capriciously, or upon light considerations, yet, there is no doubt that the corporation may change the level of any street, even after it has been paved or otherwise prepared for public use.

In the case of Callender vs. Marsh, 1 Pick. 431, Chief Justice Parker said, that "those who purchase house lots, bordering on streets, are supposed to calculate the chance of such elevations, as the increasing population of a city may require, in order to render the passage to and from the several parts of it, safe and convenient; and as their purchase is always voluntary, they may indemnify themselves in the price of the lot which they buy, or take the chance of future improvements, as they may see fit."

In the case of Goszler vs. the corporation of Georgetown, 6 Wheat. 593, the supreme court of the United States held, that the power given to the corporation of Georgetown, by the act of Maryland Legislature

of November, 1797, to graduate the streets of that city, is a continuing power, and the corporation may, from time to time, alter the gradation so made.

In the year 1797, the legislature of Maryland, among certain additional powers given to the corporation of Georgetown, enacted, that they shall have full power and authority to make such by-laws and ordinances for the graduation and leveling the streets, lanes and alleys, within the jurisdiction of the same town, as they may judge necessary for the benefit thereof. In pursuance of this authority, the corporation passed an ordinance in May 1799, for the graduation of certain streets; the first section of which appoints commissioners, and authorises them to make the level and graduation of the streets. The second is in these words: "And be it ordained, that the said level and graduation, when made by the commissioners, or a majority of them, and returned to the clerk of this corporation, shall be forever thereafter considered as the true graduation of the streets so graduated, and be binding upon this corporation and all other persons whatever, and be forever thereafter regarded in making improvements on said streets."

The plaintiff owned lots upon one of these streets, and made improvements thereon, according to the graduation made and returned to the clerk of the corporation under directions of this ordinance. In September 1816, the corporation passed another ordinance, directing the level and graduation of this street to be altered; and the commissioners appointed, being about to cut down the street, by the plaintiff's house, were enjoined from proceeding, by a bill filed against them and the corporation by the complainant: Upon the final hearing, the circuit court dismissed the bill, being of the opinion that the corporation had the power, asserted by them in their answer, of altering the level and graduation of a street graduated under the former ordinance of May, 1799. The supreme court decided, that this power was a continuing one, in the corporation; that the original power continues after its first exercise. Chief Justice Marshall did give some weight to the phraseology of the act. He said, that the power was not to graduate and level the streets, or to make a by-law for the graduation and leveling of the streets, but to make such by-laws and ordinances for the graduation and leveling of the streets, &c., as they may judge necessary for the benefit of the town. "The act" says the Judge, "contemplates a continuance of the power; a repetition of the by-laws and ordinances as the corporation may judge necessary for the benefit of the town."

It gives a power to legislate on the subject, and to pass more than one by-law, and ordinance respecting it. This, like all power, is sus-

ceptible of abuse, but is trusted to the inhabitants, themselves, who elect the corporate body, and who may, therefore, be expected to consult the interests of the town. The graduation and levelling of the streets is not necessarily a single operation.

The power given to the corporation of St. Louis, by its charter, is equally as ample as that given to Georgetown. The 3rd section of the 3rd article of the charter declares: "That the city council shall have power, subject to the restriction of the last clause of the second section, (which restriction consists of the words "not repugnant to the constitution and laws of this State,") to make all ordinances, which shall be necessary and proper for carrying into effect the powers specified in the preceding section, and all other powers vested by this act in the corporation, the city government, or any department or officer thereof." The city authorities, in our opinion, having the power to alter the grade of the streets and avenues, this case must then fall within the class of cases like those of Gurno vs. the City of St. Louis, and Taylor and others vs. the City of St. Louis, heretofore decided by this court.

In the case of Hay vs. Cohoe's company, 2 Comstock 159, the court observed, that "no one question, that the improvements contemplated by the defendants, upon their own premises, was one proper and lawful. The means by which it was prosecuted were illegal, notwithstanding, they disturbed the rightful possession of the plaintiff, and caused a direct and immediate injury to his possession." Let the city authorities go beyond the corporate limits of the city, purchase a tract of land (if it had the power,) and commence blasting rock thereon, so near to the dwelling house of a proprietor of an adjoining tract of land, as to break his windows or roof, and the cases will be more parallel.

The liability of the corporations to actions for consequential damages, has engrossed the attention of the Courts of most of the States of the Union, and the decisions are not uniform, but are more or less contradictory and conflicting. We acquiesce in the decisions of this Court in the cases of Gurno vs. the City of St. Louis, and Taylor, et al, vs. the City of St. Louis, heretofore made; and being satisfied of the power of the Corporation to grade anew the avenue in question, this case must be determined according to the ruling in those cases.

The other Judges concurring, the judgment below is affirmed :-