————o————

EUNICE THURSTON, Appellant, vs. CITY OF ST. JOSEPH, Respondent.

1. *Damages—Injuries to land from building of sewers—Party entitled to compensation, etc.*—Where in consequence of the negligent manner of constructing a sewer a private lot is flooded with water, the city will be liable for the resulting damage.

Such a work is not a matter of supreme necessity involving the safety of the people. Hence the maxim "*salus populi, suprema lex*" can have no application. 2. The right to the use of the street is a property interest, and the lot holder is as much entitled to protection in it as in the lot itself. Hence the land owner will be entitled to compensation for the resulting injuries under § 16, art. 1, of the State Constitution. (City of St. Louis vs. Gurno, overruled.)

PER WAGNER, Judge.

2. *Damages—Sewers, injuries to land caused by building of—Party injured entitled to damages.*—Where the work of constructing sewers was of such a character as to require the exercise of judgment as to the time when and the mode in which they should be undertaken, and the best plan which the means at the disposal of the corporation rendered it practicable to adopt, the corporation would not be responsible for a defect or want of efficiency in the plan adopted.

But the work of constructing sewers is ministerial in its character; and when a corporation undertakes this work, it is responsible in a civil action for damages caused by the careless or unskillful performance of the work. So it is the duty of corporations to keep sewers in repair, and if they are negligently permitted to become obstructed or filled up so as to cause the water to back flow and do injury, there is a liability on the part of the corporation having control over them.

But where corporations act under authority conferred by the Legislature, and exercise reasonable care and skill in the performance of such work, they are not answerable to adjoining owners, whose lands are not actually taken, for consequential damages to their premises, unless there is a provision to that effect in the charter of the company or in some statute creating the liability.

*Appeal from Buchanan Court of Common Pleas.*

*Everett & Reed*, for Appellant.

I. The petition contains facts sufficient to constitute a cause of action. (Blake vs. The City of St. Louis, 40 Mo., 570; Weightman vs. Corporation of Washington, 1 Black, U. S. 39.)

*Chandler & Sherman*, for Respondent.

Injuries sustained by persons from defects in the streets, for which the city would be liable are limited to injuries sustained within the territory of the street.

The city has no right to go outside of its limits and tamper with the embankments to private property. It cannot, therefore, be held responsible for remote and contingent damages produced by a combination of causes over a part of which at least it has no control whatever. (Sykes vs. Town of Powlet, 43 Vt.)

No *active*, affirmative wrong is alleged to have been done by the city. The failure of the city is at most a failure to exercise a discretionary power for which the city was not responsible. The city is not liable for failure to prosecute a public work. (Detroit vs. Blakerly, page 670, November 1870 number, Am. Law Reg.

That the city has the right to build the grade of its streets higher than private property, is beyond question. (20 How., 135; 35 Penn., 324; 4 Green, Iowa, 47.)

When the city establishes a system of sewerage and does not require private property owners to conform their drains therewith, and the water from the public sewer overflows, the city is not liable. (8 Allen, 127; 13 Gray, 601; 4 Allen, 41; 1 Denio, 515; 32 N. Y., 489; 4 Penn. St., 364; Dillon Mun. Corp., §§ 799, 802.)

ADAMS, Judge, delivered the opinion of the court.

The main point presented by this record is the liability of a municipal corporation for damages resulting to a lot holder from improvements made under authority conferred by the city charter.

What are the rights of a lot holder in reference to the adjacent streets and alleys? The owner in fee of a tract of land, may have it surveyed into town lots, streets and alleys; and without selling any of the lots or acknowledging the plat, he may destroy the survey and vacate the streets and alleys. But if he convey away any of the lots, the right to the free use of the adjacent streets will pass to the grantees as appurtenant to their lots; and such grantees will not only have a servitude or easement in the adjacent streets and alleys as appurtenant to the lots, but the conveyance itself would be a dedication of the streets and alleys to the public as well as to the private use of the lots. This would be the result without any statutory dedication by acknowledging and filing the plat with the county recorder. The effect of a statutory dedication however, is precisely the same. It vests in the adjacent lot holder, the right to the use of the streets as appurtenant to his lot, and this easement is as much property as the lot itself. It is a

property interest, independent of the right of the public to use and improve the streets as public highways, and the lot holder is as much entitled to protection in the enjoyment of this appurtenant easement as he is in the enjoyment of the lot itself. Hence, whatever injures or destroys this easement, is to that extent a damage to the lot. So if in grading a street it be raised so high as to throw the surface water back upon the lot, or prevent a free access to the street; or if the street be excavated so low as to render the easement of no use to the lot, the lot holder is thereby damaged to the extent of the loss of such easement. The question here is whether the lot holder has any remedy at all for such injuries. The case under consideration is a sewer which the city no doubt had the power to construct. But the gravamen of the compliant is that through negligence in the construction of this sewer, water was thrown on the lot of the plaintiff and thereby injured her property. If we are still to follow the rule as laid down in the city of St. Louis vs. Gurno, 12 Mo., 414; and the subsequent cases of Taylor vs. St. Louis, 14 Mo., 20; and Hoffman vs. St. Louis, 15 Mo., 651, we must deny all remedy for such injuries. In the cases referred to, this court followed the lead of the King's Bench in the Governor, &c., vs. Meredith and others, 4 T. R. (D. & E.,) 794. The doctrines laid down in that case by Lord Kenyon and other judges, in my judgment are not applicable to America. The improvements which caused the injury, were made under an act of Parliament which authorized the commissioners to allow damages, but the court seemed to place their decision on the ground that parliament was omnipotent, and on this ground alone denied any remedy to the injured party. The court held that as the improvement was for public convenience, the maxim *"salus populi suprema lex esto "* applied, and that private rights must yield to public convenience. The same line of reasoning was maintained by the learned judge who determined the opinion in the leading case of St. Louis vs. Gurno. In adopting the rule laid down by the King's Bench, he said: "it has long since passed into a maxim, that the safety of the people is the supreme law and, as a corollary

33—VOL. LI.

from this ancient truth, that individual convenience must yield to the public good."

Conceding the maxim to be just, the corollary in the comprehensive sense used in England is a *non sequitur* as applicable to the American States. Our governments are republican, and are instituted for the protection of the people, in their individual rights of persons and property. These rights cannot be invaded as a mere matter of convenience to the public. It is only where the safety of the people is involved, that individual rights can be destroyed to protect the community from impending danger. Thus in great conflagrations, private houses may be torn down or destroyed to stop the fire, and in like manner property of any kind may be destroyed to prevent the spread of contagious diseases.

The destruction of private property in such cases is an overruling necessity and is only a proper application of the right of self-defense which the people as well as individuals may resort to for their own safety. It must, however, be a supreme necessity which authorizes the destruction of private property for the safety of the people. When such necessity in fact exists the maxim " *salus populi suprema lex* " will apply and the party whose property is destroyed is without remedy—his loss being " *damnum absque injuria.*" But this maxim ought not to be applied to mere matters of public convenience. The improvement of streets, drainage, sewers, &c., are in almost every instance mere matters of public convenience which the city authorities in their discretion are allowed by law to make. They are not matters of supreme necessity involving the safety of the people, and hence this plea is not applicable to the case under consideration.

The city authorities are allowed to establish sewers and to alter them from time to time, and they may establish the grade of streets, and may from time to time alter and re-establish such grades. These powers are not exhausted by their exercise, but are continuing powers. (See Hoffman vs. St. Louis, 15 Mo., 651; Goszler vs. Georgetown, 6 Wheat. (U. S.) 593.) But can such powers be exercised to the injury of pri-

vate lot holders without paying a just compensation. It is said that lot holders make their purchases and build their houses with a knowledge of these powers in the city authorities and must therefore take the consequences. If they build to an established grade or before any grade is fixed, in either case, under this rule, they must do so at their peril. A lot holder of large fortune may invest it all in a fine edifice, built precisely to an established grade, and the city authorities may as soon as his house is completed alter the grade by lowering it a hundred feet or raising it the same number of feet and thus entirely destroy the appurtenant easement and render his house and lot utterly valueless. After thus being served ought the Courts to be closed against the appeals of the injured lot holder for relief? Is it any consolation to him to hear a lecture read about the necessity of further legislation and to be told that his loss is "*damnum absque injuria*," that he ought to have a remedy, but the political power of the State must be looked to and not the Courts, that the granting of such immense power to a city thus to destroy his property ought to have been so guarded as to have allowed a just compensation for such injury.

This line of argument and advice was tendered as a justification for refusing relief in St. Louis vs. Gurno, and was followed without inquiry in the subsequent cases of Taylor vs. St. Louis and Hoffman vs. St. Louis, *ubi supra.* The same course of reasoning was pursued by the Courts of New York, Pennsylvania and Massachusetts, relied on as authorities in St. Louis vs. Gurno. (See Wilson vs. City of New York, 1 Denio, 595 ; 4 Serg. & R., 514 ; 9 Watts, 382 ; Callender vs. Marsh, 1 Pick., 418.) The same thing may be said in regard to all the American cases maintaining the doctrines laid down in St. Louis vs. Gurno.

It is a notable fact that most of the American Courts have blindly followed the rulings of the British Court in the leading case of the Governor, &c., vs. Meredith and others, 4 D. E., 794. In doing so, they have entirely ignored some of the plainest and most imperative provisions of the bill of rights

contained in the Constitutions of the several States. Section 7, of Article 13 of the old Constitution of Missouri, reads as follows: "That courts of justice ought to be open to every person, and a certain remedy afforded for every injury to person, property or character; and that right and justice ought to be administered without sale, denial or delay; and that no private property ought to be taken, or applied to public use without just compensation." The provisions of this section were incorporated into the new Constitution, and will be found to be divided into two sections, viz: sections 15 and 16 of Article 1. Section 15 requires courts to be open, and a remedy afforded for every injury, &c., and section 16 declares that private property shall not be taken for public use, without just compensation. By these provisions of our Constitution a *certain remedy for every injury to property* is guaranteed to the citizen, and this guaranty is as sacred and imperative as the one which protects him in the enjoyment of his private property from appropriations to public use without a just compensation.

Therefore, when the legislature confers on cities the right to take private property for public use, or the authority to grade streets and make sewers, &c., the power must be taken and exercised subject to these constitutional guarantees. So that when cities, in the exercise of their undoubted powers in making improvements, injure lot holders, they do so subject to the rights of the lot holders to sue them for such injuries. The legislature has no power to violate these plain provisions of the constitution; and the only proper way to construe such laws is to give them full force, allowing cities to exercise the powers conferred to the fullest extent, subject however, to the rights of a citizen to a just compensation for all injuries to his property. When such laws do not in terms provide a remedy, it is implied and may be resorted to under these provisions of the constitution.

These constitutional provisions may be looked to as entering into, and forming a part of all such laws, otherwise the courts would have to declare them unconstitutional and void.

In Lackland vs. The North Mo. R. R. Co., 31 Mo., 180, this court allowed a lot holder to recover .damages against the railroad company, for obstructions placed in a street under authority assumed to be given by the city of St. Charles to the railroad company. The court denied the power of the city under its charter to allow the railroad company to appropriate the street as indicated ; but did not wish to be understood as saying that the legislature could not grant such power to the corporation. I maintain that the legislature may grant power to cities to improve the streets, or to appropriate them, to the injury of the lot holder. But when such power is exercised to the injury of the lot holder, he must have an adequate remedy. The city may exercise the power, but ·must answer for the consequences to the lot holder. The true ground of his ·right to recover, is his appurtenant easement or property interest in the street itself.

Judge Napton, in Lackland vs. North Mo. R. R. Co., (supra) predicated the plaintiff's right of recovery on this very ground. The learned Judge speaking for the court said, " as .to the ownership of the soil of the street, the question is of no practicable importance. The right of the owner of a lot in a town to the use of the adjoining street is as much property as the lot itself, and the legislature can no more deprive a man of one than the other without compensation." This language enunciates the true doctrine, and is in direct conflict with the rulings of the same learned Judge in St. Louis vs.· Gurno, and in effect overrules the principles laid down in that case.

In my opinion the court erred in excluding the evidence offered by the plaintiff. I think the judgment ought to be reversed and the cause remanded. Judge Sherwood concurs. Judge Ewing also concurs in the result. Judge Wagner files a separate opinion. Judge Vories having been of counsel, did not sit.

Separate opinion of WAGNER, Judge.

I do not concur with the opinion of Judge Adams in overruling the case of the city of St. Louis vs. Gurno, (12 Mo., 414,)

and the subsequent cases of Taylor vs. St. Louis, (14 Mo., 20,) and Hoffmann vs. St. Louis, (15 Mo., 651,) nor in my judgment does the case at bar properly present the question that he has mainly considered.

St. Louis vs. Gurno decides that a corporation is not liable to an action for damages consequential upon the grading and paving of a street, directed by the corporate authority, in pursuance of an ordinance authorized by its charter. The decision was made in 1849. All our subsequent rulings have conformed to it, and it has ever since been considered as definitely settling and establishing the law in this state. It would be superfluous to attempt to review the question on my part, for the remarkably clear and able presentation of the case by Judge Napton, leaves very little further to say. It may be added, however, that the decision then made was in harmony with the almost entire current of authorities, both in the English and American Courts, and that the subsequent cases up to the present time, have but tended to confirm and strengthen the doctrine.

The law on this question is settled in England, by the Supreme Court of the United States, and by the Courts of the several states, with an uniformity that makes it almost universal.

The recognized doctrine is that municipal corporations acting under authority conferred by the legislature to make and repair, or to grade, level and improve streets, if they exercise reasonable care and skill in the performance of the work resolved upon, are not answerable to the adjoining owner, whose lands are not actually taken, for consequential damages to his premises, unless there is a provision in the charter of the corporation, or in some statute creating the liability. The cases are very numerous and are well collected in Dillon on Municipal Corporations.

In the present case the action was brought by the plaintiff against the city, to recover damages for overflowing her premises in consequence of defective and insufficient sewerage. In the petition it is alleged that defendant by its agents, em-

ployees and servants, built a new sewer to connect with an old one, and so negligently, unskillfully and carelessly joined the two together ; and by reason of one of the sewers being insufficient to carry off the water from the other, and by the accumulation and stoppage of sticks and small timber, the water burst out and did the damage. At the trial the Court refused to allow the plaintiff to introduce any evidence, on the ground that the petition did not state facts constituting any cause of action against the defendant, and the plaintiff thereupon took a non-suit.

The established doctrine in reference to the construction of sewers, is this : that where they require the exercise of judgment as to the time when, and the mode in which they shall be undertaken, and the best plan which the means at the disposal of the corporation renders it practicable to adopt, then their construction is in the nature of judicial or quasi judicial proceedings, and the corporation is not responsible for a defect or want of efficiency in the plan adopted. But when the duty as respects sewers, ceases to be judicial or quasi judicial, and becomes ministerial, then the corporation will be liable for the negligent discharge, or the negligent omission to discharge such duty, resulting in an injury to others. (See Dill. Mun. Corp., §§ 801 and 802.)

The work of constructing sewers is ministerial, and when the corporation undertakes this work, it is responsible in a civil action for damages caused by the careless or unskillful performance of the work. So it is the duty of corporations to keep sewers in repair, and if they are negligently permitted to become obstructed or filled up, so as to cause the water to flow back, and do injury, there is a liability on the part of the corporation having control over them.

Now the averments in the petition of negligence in joining the two sewers in their construction, and permitting the stoppage by the accumulation of sticks and timber, so as to cause the sewer to burst open and overflow the plaintiff's property showed, I think, a good cause of action. For they showed a negligent discharge or negligent omission to discharge duties

which were ministerial in their nature. If the defendant denied the material allegations contained in the petition, and sought to avoid responsibility on the ground that its action was judicial and depended on the exercise of judgment, it should have set up that fact in the answer, and developed it on the trial.

For this reason, and this only, I am in favor of reversing the judgment of the lower court, and remanding the cause.