## CLEMENS v. CONNECTICUT MUTUAL LIFE INSURANCE COMPANY et al., Appellants.

### Division Two, July 16, 1904.

**CHANGING GRADE OF STREET: Damages: Injunction.** Where the property of a citizen is not taken and his proprietary rights are not disturbed, but the damage to his property is purely consequential, due to a change of the grade of a street or alley, in accordance with a valid ordinance, he is not entitled, under the Constitution which says that "private property shall not be taken or damaged for public use without just compensation," to have his damages ascertained and paid before the public work is done. And if the work is to be done in pursuance to valid legislative and municipal authority, he is not entitled to have the work enjoined until those damages are ascertained and paid, whether he is an abutting owner on the street to be changed or not. His remedy is, if he has one at all, by an action at law against the city for damages after the work is done.

Appeal from St. Louis City Circuit Court.—*Hon. P. R. Flitcraft,* Judge.

REVERSED (*with directions*).

*McKeighan & Watts* and *Barclay & Fauntleroy* for appellants.

(1) The evidence discloses a total failure of proof. The petition charges that defendants were changing the grade of Arkansas avenue without any authority to do

so. It describes a trespass, whereas the evidence shows that every act of defendants was authorized by ordinance of the city and by permits from the proper city authority. No claim is made in the petition of an injury by a lawful or authorized change of grade. The failure of proof is obvious and glaring, and there was no ground for the decree. Crawford v. Aultman, 139 Mo. 262; Hollmann v. Lange, 143 Mo. 100; Huston v. Tyler, 140 Mo. 252. (2) The city had the undoubted right to fix the grade, being responsible for any damages resulting therefrom, under the Constitution of Missouri (art. 2, sec. 21) and under the charter of St. Louis (R. S. 1899, p. 2512, sec. 19) but property-owners on the line of streets where the grade was changed by the city were in duty bound to observe the mandate of the city in making improvements upon their adjacent property, after enactment of the ordinance adopting the last grade. Van De Vere v. Kansas City, 107 Mo. 83; Ruckert v. Railroad, 163 Mo. 260. (3) Injunction would not be available, even if the suit had been properly brought. Plaintiff is not an abutting owner upon Arkansas avenue, the street where the change of grade is charged to have occurred. The case falls within the principle of many decisions which deny injunctive relief in such circumstances. Cummings v. Ice Co., 156 Mo. 28; Glasgow v. St. Louis, 107 Mo. 198; Knapp, etc. Co. v. St. Louis, 156 Mo. 343. (4) There was no showing by plaintiff of any prospective damages to result to his property by the proposed change of grade on Arkansas avenue (a half block distant from plaintiff's western line) at the corner of Cherokee street. The only damage charged by the petition to be threatened is that the property of plaintiff would "be placed in a depression below the grade of the neighboring streets, and subject to overflows." The evidence fails to establish such damage as a probable result of the change of grade on Arkansas avenue. The evidence does not prove that, by any alleged change of grade, anywhere,

any damage will be caused to plaintiff's property by diminishing its value in any particular. Such proof is essential to a recovery of damages for change of grade, and, for stronger reason, is it essential to any injunction such as was decreed in this case. Schuster v. Myers, 148 Mo. 422; Cole v. St. Louis, 132 Mo. 633; Van De Vere v. Kansas City, 107 Mo. 83; Christian v. St. Louis, 127 Mo. 109; Cummings v. Ice Co., 156 Mo. 28.

*Rassieur & Buder* for respondent.

(1) The fact that plaintiff is not an "abutting owner" is not a bar to an injunction against the defendants. It is only necessary to show that the property itself, or some right or easement connected therewith, is directly affected and that it is specially damaged. Van De Vere v. Kansas City, 107 Mo. 83; Rude v. St. Louis, 93 Mo. 408; Glaessner v. Brewing Assn., 100 Mo. 508; 3 Sedgwick on Damages (8 Ed.), p. 303, sec. 1093. (2) When a person suffers some special damage over and above the community in general, he may have his action therefor even though others may have like actions. Schoen v. Kansas City, 65 Mo. App. 134. (3) The proper remedy is an injunction, until the damage to plaintiff's proprietary rights is ascertained and paid. Schopp v. St. Louis, 117 Mo. 131; Glaessner v. Brewing Assn., 100 Mo. 508; Gates v. Railroad, 111 Mo. 33; Carpenter v. Gresham, 59 Mo. 247; McPike v. West, 71 Mo. 199; Van De Vere v. Kansas City, 107 Mo. 83.

GANTT, P. J.—This is an appeal from a decree of the circuit court of the city of St. Louis perpetually enjoining the defendants from changing the grade of Arkansas avenue in said city, between the north line of Cherokee street and the south line of McKean avenue, and from changing the grade of the alley running from the Gravois Road or Gratiot avenue to Arkansas avenue through city block 1492 of the city of St. Louis.

This suit was commenced June 20, 1899, and a preliminary injunction was granted June 26, 1899.

The petition states that the plaintiff is the owner of lots 8, 9 and 10 in block 1492, having an aggregate front of one hundred and sixteen feet and one inch on the north line of Cherokee street, by a depth northwardly of one hundred and twenty-seven feet, eight and three-fourths inches in a line parallel with the east line of Arkansas avenue to an alley fifteen feet wide, and that the Connecticut Mutual Life Insurance Company is the owner of lot No. 7 in said block, a strip of ground seventy feet wide on the north line of Cherokee street and running northwardly of that width one hundred and twenty-seven feet, eight and three-fourths inches to the said alley; and the said defendant also is the owner of the remainder of said block 1492, which said block bounds on the east line of Arkansas avenue between Cherokee street and McKean avenue, and also owns block 1494 which bounds on the west line of Arkansas avenue between said two streets; that the city of St. Louis established a grade for the said Cherokee street and Arkansas avenue at their intersection and at the places where they adjoin the said city blocks, and with the knowledge of said grade, the plaintiff purchased and improved his said property, adjusting his buildings to said grade; that the defendant and its agents without legal authority and against the protest of plaintiff are now engaged in making and constructing the said Arkansas avenue between the said Cherokee street and McKean avenue, and in so doing are changing the grade of said Arkansas avenue from Cherokee street to McKean avenue, and of the said Cherokee street at the point of its intersection with Arkansas avenue by raising the same two and six-tenths feet "*and by* raising the same at said alley at the point of its intersection with said Arkansas avenue four and two-tenths feet, thereby interfering with the free ingress

and egress to and from plaintiff's said property over and along said alley from and into said Arkansas avenue; that by so making said grade as they are about to do the property of plaintiff will be placed in a depression below the grade of neighboring streets and subject to overflows, to the irreparable damage of plaintiff." The answer is as follows:

"1. The defendants, by their counsel, for answer to the plaintiff's petition herein admit the defendants are corporations as alleged.

"Whether or not plaintiff is the owner of the tracts of land, or any of them, mentioned in said petition, said defendants have no knowledge or information sufficient to form a belief, and therefore require proof.

"Whether plaintiff purchased, improved or maintained his said property with knowledge of the grade of the adjacent streets, these defendants have no knowledge or information sufficient to form a belief, and therefore require strict proof.

"Defendants admit that the city of St. Louis by ordinance established a grade for the said Cherokee street and Arkansas avenue.

"Defendants deny that they are changing the grade of Arkansas avenue from Cherokee street to McKean avenue, or of Cherokee street at its intersection with said Arkansas avenue.

"Defendants deny that they are raising the grade at either of said streets, or portions of said streets, two and six-tenths feet.

"Defendants deny that they are changing the grade of any of said streets, or portions of said streets.

"Defendants further deny they are now engaged in making or constructing any portion of said streets wthout legal authority.

"2. Defendants for further answer admit that they have been making certain improvements in and upon the streets aforesaid, but defendants aver that the same are strictly in accordance with the grade as fixed by

the city of St. Louis at the-places where said improvements are being made by defendants.

"Defendants further deny generally all the allegations of the petition not otherwise referred to in this answer.

"Having fully answered, defendants ask to be hence discharged with their costs."

No reply was filed.

At the April term, 1900, a final decree of injunction perpetually enjoining defendants was entered.

The facts developed on the trial are the following:

Plaintiff is the owner of lots 8, 9 and 10 in block 1492 and defendant owns lot No. 7 and the remainder of said block. City block 1492 is bounded on the south by Cherokee street, on the east by Gravois road or avenue, on the north by McKean avenue, and on the west by Arkansas avenue. At the time plaintiff purchased his said lots there was in force an ordinance, No. 12525, approved November 7, 1883, establishing the grade of Arkansas avenue at the intersection thereof with Cherokee street and with McKean avenue.

On November 26, 1897, another ordinance No. 19206 was enacted, establishing the grades of streets and avenues in the district bounded south of Cherokee street and by Utah street, running west of Grand avenue; north by Arsenal street, east by Louisiana avenue and Gravois avenue, and west by Spring avenue and repealing parts of ordinance 12525, 15432, 16178, 17274 and 17732. The defendant, through its agent, the Pitzman Surveying Company, was proceeding to curb and gutter its property and construct the superstructure of Arkansas avenue adjacent to its property in said street under a permit from the city authorities, when this injunction was granted perpetually enjoining it from doing said work in conformity to ordinance 19206. The city of St. Louis was not made and is not a party to said suit.

The liability of the city for damages resulting to

adjoining property-owners who have built their improvements in conformity to the first grade established by the city by a change of such grade is only incidentally and collaterally involved in this case, and the city has not been made a party defendant, and no damages are asked against the city. It appeared that plaintiff purchased his lots 8, 9 and 10 in block 1492 in 1890 and 1893 and had constructed thereon a brick stable and feed store and sheds and carriage houses thereon and a residence and laid granitoid pavements abutting on Cherokee street in front of lots 8, 9 and 10, fronting on said street. Plaintiff's said property nowhere touches Arkansas avenue. By the changes of grade from that established by ordinance 12525 in 1883 to that fixed by ordinance 19206 in 1897, Arkansas avenue at the intersection of Cherokee street will be raised two and six-tenths feet, and at the mouth of the alley between Arkansas avenue and Gravois avenue in block 1492, on Arkansas avenue, the grade will be raised four and two-tenths feet, and at the point on Arkansas avenue where the same intersects with McKean avenue, the grade will be raised five and eight-tenths feet, and plaintiff's evidence tended to prove that when said grade was thus changed the southwestern corner of plaintiff's lot 8 would be one foot and four inches below said new grade. It will thus be seen that plaintiff's property does not abut on Arkansas avenue, the street affected directly by the change of grade, but plaintiff's right to recover in this suit is based on the claim that, notwithstanding his property does not abut on Arkansas avenue, his property and certain rights and easements connected therewith will be affected to his injury by the said contemplated changes of grade by the ordinance 19206 of November 26, 1897, and his ingress and egress to and from his said property over and along the alley in block 1492 to Arkansas avenue would be interfered with. It was admitted the city had taken no steps to have such supposed damages to plaintiff's property assessed. Ac-

cording to the evidence of Mr. Varrelman, the street commissioner of the city, and witnesses for plaintiff, the grade of the alley itself had never been established; that no profile of it had ever been made. The plaintiff's evidence showed that the mouth of the alley necessarily conformed to the street into which it opened, but no work had ever been done in the alley itself and no stakes driven in it, and save as to the point of intersection of the alley with Arkansas avenue there was not even a paper grade defined by the city authorities.

While there is a large volume of evidence, there is practically little conflict.

I. By section 26 of article 3 of the Scheme and Charter of St. Louis, paragraph 2, the municipal assembly of the city of St. Louis has the power to grade and change the grade of streets, avenues and alleys in said city when deemed best for the public good, subject to the liability of the city for damages resulting to abutting property-owners from the exercise of such power. Prior to the amendment of the Constitution in 1875, the city in the legitimate exercise of its corporate powers could change the grade of a street or alley by ordinance without being liable for any consequential damages to an abutting owner. [City of St. Louis v. Gurno, 12 Mo. 414; Taylor v. St. Louis, 14 Mo. 20; Hoffman v. St. Louis, 15 Mo. 651; Soulard v. St. Louis, 36 Mo. 546.]

With the exception of Thurston v. City of St. Joseph, 51 Mo. 510, the decision in St. Louis v. Gurno was uniformly followed by this court until the adoption of our Constitution of 1875. By section 21 of article 2 of that Constitution it is provided that "private property shall not be taken *or damaged* for public use without just compensation." After these words, "or damaged," were added to this section it was ruled in Householder v. Kansas City, 83 Mo. 488, that a city can not change the grade of a street to the damage of a lot abut-

ting upon it without compensation to the owner. [Sheehy v. Railroad, 94 Mo. 574.]

In Van De Vere v. Kansas City, 107 Mo. 83, a fire engine house was commenced by the city upon the lot adjoining the plaintiff's lot and he sought an injunction to prevent it. Judge BLACK, after adverting to the settled rule prior to the change in the Constitution above mentioned, reviewed the authorities on this subject and the whole court concurred in holding that the amendment did not cover the case and dismissed the bill. Among other cases he cited the decision in Rude v. St. Louis, 93 Mo. 408, in which case the plaintiff owned property on High street five hundred feet distant from a point where railroad tracks crossed that street. The tracks were depressed by authority of authorized ordinances from four to six feet to conform to a system of bridges then in process of erection. The street was allowed to remain in this condition impassable for teams for three years. Suit was for damages because of the obstruction of the street and it was held he could not recover. The like result was reached in Fairchild v. St. Louis, 97 Mo. 85, and Canman v. St. Louis, 97 Mo. 92. These cases were like Rude's case except that in one plaintiff's property was three hundred and fifty feet and in the other one hundred and twenty-five feet from the same obstruction.

In those cases it was held that to bring a case within the amendment, the plaintiff, if suing for consequential damages, must show that he suffered an injury special and peculiar to his property, and that it was not enough to show a damage the same in kind as that suffered by other persons though different in degree, but he must show that the property itself or some right or easement connected therewith is directly affected and that it is specially affected.

Judge ADAMS, who by common understanding was the author of the amendment "or damage" to section 21 of article 2 of the Constitution, and who wrote the

opinion in Thurston v. St. Joseph, 51 Mo. 510, in the last-mentioned case said: "I maintain that the Legislature may grant power to cities to improve the streets, or to appropriate them, to the injury of the lotholder. But when such power is exercised to the injury of the lotholder, he must have an adequate remedy. The city may exercise the power, but must answer for the consequences to the lotholder. *The true ground of his right to recover is his appurtenant easement or property interest in the street* itself."

In Knapp, Stout & Co. v. St. Louis, 153 Mo. 572, it was held that to entitle a property-owner to relief against the attempt of the city of St. Louis to vacate a street he must allege and prove that he owns property abutting on that part of the street which the ordinance vacates and that he will suffer a special injury and not merely such inconvenience as is cast upon all other persons in that neighborhood, and unless the petition for injunctive relief avers that the plaintiff's lot abuts on the street to be vacated it is fatally defective. In various cases it has been ruled that an abutting owner has a clear legal right to damages for vacating a street on which his property abuts. [Heinrich v. St. Louis, 125 Mo. 424; Christian v. St. Louis, 127 Mo. 109.] But the very fact that he had ample remedy at law was held to deprive him of the remedy by injunction. [Knapp, Stout & Co. v. St. Louis, 153 Mo. 574.]

The foregoing cases sufficiently indicate the state of the decided law on this subject in this Commonwealth.

Applying these principles of law and equity to the facts developed, ought the decree of the circuit court to be affirmed? Arkansas avenue, the grade of which was raised by the ordinance of 1897, is distant seventy feet from plaintiff's premises. In other words plaintiff is not an abutting owner on said Arkansas avenue. The defendant, the Connecticut Mutual Life Insurance Company, did own property abutting on Arkansas avenue in blocks 1492 and 1494, and was proceeding to im-

prove its said property by constructing guttering and curbing and the superstructure of the street in front of said property presumably for the purpose of putting it on the market, as it was wholly unimproved. It was having these street improvements made in strict conformity to the grade established by ordinance in 1897 for Arkansas avenue.

There can be no doubt the city had authority to establish the grade in the first instance, and to change it in 1897, if in the opinion of the municipal assembly it was deemed best for the public interest. No change of the grade on Cherokee street adjoining plaintiff's property had been made when this injunction was sued out, and it is only by assuming that the city hereafter will adopt a level or straight grade from the points established on Arkansas avenue and Gravois avenue that there will be any change of grade in front of plaintiff's property on Cherokee street.

There was much evidence from plaintiff's own witnesses that the city often accommodates the grade to the buildings built in conformity to the old grade when a new one is adopted. No actual grade lines have been drawn between Arkansas avenue and Gravois avenue, or along the projected alley in block 1492. The ordinance of 1897 does not define those lines. It merely fixes the points of elevation at the intersections of Arkansas avenue and the mouth of the alley.

The act of June 2, 1899, which went into effect in August, 1899, has no application to this case, which was commenced before that act took effect and is bottomed on facts existing prior to the enactment of that law.

This case presents an important question. Does section 21, article 2, of the Constitution, in the absence of any legislation, permit any public improvement on a street which does not *take* the property of a citizen, or *invade or trespass upon it,* to be stopped until every damage to owners, near and remote, on the street is

paid? We have seen that prior to the Constitution of
1875 a change of grade under a valid charter power
did not give any cause of action, but by the amendment
of section 21, article 2, of the Constitution damages re-
sulting to an abutting owner by the change of the grade
of a street are actionable. Unquestionably when there
is a *taking* of the property the owner has a right to his
compensation before his possession is disturbed, but
where, instead of taking his property, it is merely dam-
aged by the lawful public improvement, can he stop the
work until his damage is ascertained and paid? We
find no case in which this view of this constitutional
question has been presented to and decided by this
court. It is true there are some general observations,
but the facts did not call for any opinion. This exact
point has been covered by the Supreme Court of Louis-
iana. The Constitution of that State of 1879 has the
same provision which is found in section 21, article 2,
of our Constitution of 1875. It is known as article 156
of the Constitution of Louisiana. In McMahon v. Rail-
road, 41 La. Ann. 827, an injunction was sought in aid
of a suit for damages to abutting property by the con-
struction of a railroad on a street in pursuance of au-
thority from the city of Shreveport. The defendant was
permitted to give bond and proceed with the work. The
court, through Judge FENNER, said:

"It is true the Constitution, article 156, provides
that 'Private property shall not be taken *nor damaged*
for public purposes without adequate compensation
being first paid.' We will not say what might be the
effect of this article on the right to bond if the act pro-
hibited involved the taking of property, the value of
which might be settled in advance. But in this case there
is no *taking* of plaintiffs' property, which is not invaded
or touched. The damages claimed are purely conse-
quential in their nature, necessarily conjectural, and im-
possible of any accurate determination except after the

construction of the road. To impose upon parties the necessity of settling and paying such damages before proceeding with the work would be to require a manifest impossibility; and if such an injunction could not be bonded it would operate a perpetual bar to the construction of public works which was certainly not contemplated by the Constitution. . . . The defendant has done nothing but what it had a legal right to do, and it has exercised that right in a proper, prudent and cautious manner, inflicting upon plaintiffs no injury or damage except such as necessarily results from the exercise of that right. . . . But, in this case, the legal right passed to the defendant encumbered with the restriction imposed by article 156 of the Constitution, above quoted, and it must discharge that burden. . . . The article 156 of the present Constitution, in providing that 'private property shall not be taken *nor damaged* for public purposes without adequate compensation,' etc., only extended its protecting shield over one additional injury and required compensation, not only for property *taken,* but also for property damaged.

"As in the case of a taking the measure of compensation is the value of the property taken, so in the case of damage, the measure of compensation is the diminution in the value of the property."

In Railroad v. Domke, 11 Colo. 247, injunction was sought by an abutting owner to restrain further operation of the railroad on the street. The Supreme Court for the purposes of the case assumed that the laying of a third rail and doing the business of a standard gauge railroad on the street was a new and additional servitude and that those acts might result in damage to the abutting owner for which under the Constitution he was entitled to compensation, and then asks the question: "Should a court of equity, at his suit, in view of the facts of the case, grant an injunction forbidding the acts in question?" The court answers in the negative,

and says: "Where the fee of an individual is not sought to be taken, though an abutting lotowner, he can not enjoin the construction and operation of a railroad merely because the damages to his premises are not compensated in advance; provided the company act under sufficient legislative and municipal authority. [1 High on Injunctions (2 Ed.), sec. 637.]   It is contended that this doctrine ought not to be held applicable here, because of the peculiar phraseology of our Constitution. True, this instrument declares that private property shall not be 'damaged' without compensation.  It does not, however, require that the damages, where property is not 'taken,' shall be computed and paid before the injuries complained of are inflicted.  It provides that 'property shall not be needlessly disturbed, or the proprietary rights of the owner therein divested,' till remuneration be made.  The proprietary rights of plaintiffs in the land are not divested, because such rights do not exist.  There may be a *disturbance of the easements connected with the use or enjoyment of their abutting* lots; but needful disturbances of property may take place without prior compensation.  The city council, by adopting the right-of-way ordinance, determined conclusively, so far as the general public is concerned, including all interest of the plaintiffs common to the general public, that the anticipated disturbances were needful. But the disturbances mentioned in the Constitution are, in our judgment, disturbances of property sought to be taken, or, at least, property of the same owner out of which that desired is to be carved.  We do not think the clause in question was intended to require the prior assessment and payment of probable damages for disturbances, to take place in the future, of an easement connected with the property of a party, no part of which is taken, near or adjacent to the land condemned."

The court then refers to the decisions of the Su-

preme Court of Illinois construing a provision of the Constitution of Illinois similar to that of Colorado, in which injunctive relief was denied. [Stetson v. Railroad, 75 Ill. 74; Patterson v. Railroad, 75 Ill. 588; Railroad v. Schertz, 84 Ill. 135.]

In the Schertz case, the court says:

"In this case, as in that, it was contended, under that clause of section 13, article 2, of the Constitution which provides 'private property shall not be taken or damaged for public use, without just compensation,' all abutting landowners are entitled to have such consequential damages as they may sustain, assessed and paid, before a railroad company can acquire any right to put down and operate a track in a public street, and that putting it down without such assessment and payment is a violation of law. But in our former decision it was distinctly ruled that such company was not bound to make compensation for consequential or expected damages that might result to others, previous to entering upon its own land, or lands of others not complaining, to do work it has a lawful right to do under powers conferred by its charter."

These principles were fully sustained and reiterated in the later case of Parker v. Catholic Bishop, 146 Ill. 158.

In a most elaborate and thoroughly considered decision the Supreme Court of West Virginia gave the same construction to this constitutional provision, in Spencer v. Railroad, 23 W. Va. 406. [See, also, Lorie v. Railroad, 32 Fed. 270.] In nearly all of these cases it is held that the remedy is by action at law.

In our opinion the Colorado, Illinois and West Virginia and Louisiana courts correctly construe section 21 of article 2 of our Constitution, which is found in the Constitutions of those States in practically the same words as in ours, and in holding that where the property of the citizen is not taken and his proprietary rights

not disturbed, but the damage to his property is purely consequential, he is not entitled to have the same ascertained and paid before the proposed public work is done, and is not entitled to have the work done in pursuance of valid legislative and municipal authority enjoined until his damages are ascertained and paid, but that his remedy is one at law for damages.

Having reached this conclusion we hold that whether plaintiff was an abutting owner or not he was not entitled to have the improvements which were being made pursuant to an ordinance of the city and clearly within its charter powers enjoined; that plaintiff has not brought himself within any recognized head of equity jurisdiction and if he has any cause of action it is against the city for damages. It becomes unnecessary for us to determine other propositions urged by counsel.

The judgment of the circuit court is reversed with directions to dissolve the injunction and dismiss the bill.

All concur.