John W. Tremayne and Louisa Tremayne v. City of St. Louis, Appellant.—6 S. W. (2d) 935.

Court en Banc, May 18, 1928.

*Julius T. Muench* and *Oliver Senti* for appellant.

*J. E. Patton* and *Joseph Reilly* for respondents.

GRAVES, P. J.—Action for consequential damages to property abutting upon Prather Avenue in St. Louis, Missouri, by reason of lowering the grade of Prather Avenue. The dismissal *nisi* of the second count of the amended petition leaves the case now here as such an action.

We have read the statement of counsel upon both sides, as well as the abstract of record herein. Counsel for respondent do not expressly admit the correctness of the statement made by appellant, as is contemplated as a possibility by our Rule 15 as adopted October 23, 1917, yet a comparison of their statement, with that of appellant, shows that there is no substantial difference upon the issues to be determined here. There is practically but one real issue presented

by the record and assignments of error herein. Appellant's statement sufficiently states the case, and we adopt it, barring legal conclusions therein, if any such there be. The statement reads:

"This is an appeal from a judgment against the city of St. Louis for damages alleged to have been caused to plaintiffs' property by the grading of Prather Avenue, on which the property abuts.

"Defendant takes the position that the matter involved in this suit is *res adjudicata,* for the reason that a condemnation suit was brought by the city to change the grade of Prather Avenue adjacent to plaintiffs' property; that final judgment was entered in said suit; that plaintiffs did not appeal from said final judgment, and that plaintiffs have paid the city the amount of benefits assessed against their property under said judgment. Defendant, in its answer, set up the plea of *res adjudicata,* but the court below, on motions of the plaintiffs, ordered this plea to be stricken out, and, during the trial of the case, the court below excluded defendant's evidence concerning the prior adjudication.

"The record is somewhat complicated by the fact that plaintiffs' property is a corner lot, abutting on Prather Avenue, which is on the west, and on Garner Avenue, which is on the north. At the same time that the condemnation suit for the grading of Prather Avenue was filed, there was also filed a condemnation suit for the grading of Garner Avenue, and plaintiffs herein were parties defendant duly served with process in both of said condemnation suits. Final judgment was rendered on the same day in both of these condemnation suits. In the Garner Avenue condemnation suit, plaintiffs here were awarded damages, which the city paid; and in the Prather Avenue condemnation suit, the judgment was for special benefits to plaintiffs' property, which plaintiffs paid March. 12, 1921.

"Six days later, on the 18th of March, 1921, the instant suit was filed.

"Plaintiffs' original petition alleged that the damages and benefits for the grading of Prather Avenue were determined by commissioners in the condemnation suit, but that the city thereafter graded the street lower than provided for in the plans by which the commissioners made their awards.

"The amended petition on which the cause was tried is in two counts. The first count is for the grading of Prather Avenue, without first having compensated plaintiffs for damages to their property. The second (which was later dismissed) is for damages for the grading of Garner Avenue.

"The defendant, in its answer in the present case, set up the proceedings and judgments in the above-mentioned condemnation suits as an affirmative defense to the respective counts of the petition. The judge of the Assignment Division of the Circuit Court sustained

plaintiffs' motion to strike out this affirmative defense. The defendant saved its exception to the ruling of the court, and filed a term bill of exceptions.

"During the trial, the second count (relating to Garner Avenue) was dismissed. The trial as to the first count proceeded, and the files in the Prather Avenue condemnation suit were offered in evidence by the city. The trial court sustained the plaintiffs' objection to the introduction of the files in evidence, and the defendant saved its exception. The trial court, in sustaining plaintiffs' objection to the introduction of the files, stated that he was sustaining the objection due to the stand he was compelled to take, by reason of the fact that the presiding judge in Division No. 1 had stricken out that defense. The defendant offered, and the trial court refused to give, an instruction in the nature of a demurrer to the evidence at the close of plaintiffs' case and at the close of the whole case, and the jury returned a verdict of $1500 on the first count of the plaintiffs' petition.

"The plaintiffs' theory of the case, as gathered from the statement of their counsel to the court, is, that because the city did not pay any money into court for the plaintiffs' use, and because the grading was started before final judgment in the condemnation suit, that judgment was not a bar to this action in tort.

"The defendant's contentions are:

"That final judgment in the condemnation suit for the grading of Prather Avenue rendered before the filing of this suit, from which no appeal was taken, and which the plaintiffs paid, is not subject to collateral attack; and

"That said final judgment is a complete legal defense to the plaintiffs' present suit.

"In our brief the parties are referred to as they were designated below, that is, as plaintiffs and defendant."

We have changed the words Prather Avenue to Garner Avenue, in one place in the foregoing statement, because it is evident, from other parts of the statement, that there is a mistake either in writing, or in printing the statement. The "Assignments of Error" made in this court are three in number, and are thus stated:

"1. The trial court erred in sustaining plaintiffs' motion to strike out those parts of the defendant's answer which set up the proceedings and judgment in the condemnation suit as an affirmative defense.

"2. The trial court erred in refusing defendant's instruction in the nature of a demurrer offered at the close of plaintiffs' case and again at the close of the whole case.

"3. The trial court erred in sustaining plaintiffs' objection to the admission in evidence of the record of the proceedings and the

126

final judgment in the condemnation suit, which were offered on behalf of the defendant."

It will be noted that assignments 1 and 3, supra, really cover but the one question, i. e. the alleged error of the trial court in striking out that portion of the defendant's answer relating to *res adjudicata*. Assignment 2, although it urged as error the refusal of defendant's demurrer to the evidence, is closely related to the others. However, we have the two questions before us. Appellant's brief goes largely to the question of *res adjudicata*, supra, and respondents say that they have briefed the case on that theory, following therein the lead of counsel for the appellant.

The live question is one of law. This suffices for the general statement.

I. While respondents say, in their brief, that the sole question urged by appellant is that the court erred in striking out the defense of *res adjudicata*, and that they will, in the disposition of the case, follow this lead of the appellant, yet in so doing, they depart from the single issue to a certain extent. At least, to the extent of further claiming that the appellant waived its right to insist upon the alleged error of the trial court in striking out such defense by proceeding with the trial upon what was left in the answer after the plea of *res adjudicata* (pleaded by defendant) was, upon the motion of plaintiffs, stricken out of the answer. The answer, as filed, was (1) a general denial, and (2) this plea of *res adjudicata*. Thus it will be seen that after the plea of *res judicata* was stricken out, the defendant had left its general denial, and after, by term bill of exceptions, it had preserved its exceptions to the action of the court in sustaining plaintiffs' motion to strike out this plea of *res adjudicata*, defendant did proceed with the trial of the cause upon the first count of plaintiffs' petition and the general denial, as its answer.

The contention of plaintiffs is not well founded. It must not be overlooked that the motion to strike is one against the pleading of the defendant, and the further fact that it was *sustained* and one defense in the answer fully stricken out. The general rule, in this situation, is thus tersely stated in 31 Cyc. 753: "So error in sustaining a motion of this kind is waived by *subsequently pleading over or amending, or by acquiescing without objection* in the order of the court." The author is speaking of motions relating to pleadings. Conceding, without so ruling, that this correctly states the general rule, the instant case does not fall within it, because of the facts. In this case there was (1) no pleading over, (2) there was no amending, and (3) there was "no acquiescing without objection in the order of the court." In this case the defendant objected and excepted to

the action of the court in sustaining the motion of the plaintiffs to strike out this defense in the answer, and duly preserved the exception by term bill of exceptions, which is before us. There was in no way any waiver upon the part of the defendant.

It did all that it could do under the circumstances. The question has been fully ruled in Missouri upon analogous situations. The defendant, as it had the right to do (R. S. 1919, sec. 1232), set up two defenses, i. e. (1) a general denial and (2) *res adjudicata*. Defendant can plead as many defenses as he has, and if any of them are stricken out by the court, he may preserve his exceptions to such action of the court by a bill of exceptions, and proceed to trial upon what is left of his answer without waiving his right to a review of the court's action in striking out one or more of his defenses.

In Cochran v. Railroad, 113 Mo. l. c. 366, GANTT, P. J., said:

"It must be remembered that a defendant occupies a different attitude from his adversary, the plaintiff. The plaintiff brings the action. If the ruling is adverse, he may take a nonsuit. Not so with the defendant. He is in court without his consent. The court may make any number of rulings that he may deem erroneous, but he cannot abandon the case; he is in court and must remain till the cause is finished. *He has a right to tender as many defenses as he has. If the court erroneously deny him one, he must avail himself as best he can of those remaining. He, however, advises the court and his adversary of his claim, and if he submits, as he is bound to do, to the ruling of the court, and tries his case in accordance with the judgment of the trial court, on what principle is he estopped from complaining of the action of the trial court and his adversary in forcing him to fight the battle upon ground selected by them and at a great disadvantage to him? We see no element of estoppel in such a case.*"

The italics are ours in the above quotation, as well as in those that follow.

LAMM, J., in his very forceful and peculiar witty style, Kinefick Hammond Co. v. Fire Ins. Society, 205 Mo. l. c. 307 and 308, approved this language of GANTT, P. J., and has added thereto thus:

"(a) In construing rules of appellate practice in accordance with right reason regard must be had to the difference between the position occupied by a defendant and that occupied by a plaintiff. The plaintiff goes into court voluntarily; the defendant is 'lugged' in, that is, pulled in by the lugs, *will ye, nill ye.* The plaintiff goes up to battle on his own ground—he pitches the field. The defendant by a plea in avoidance may undertake to flank plaintiff's position and select another battlefield. The trial court may parry the flanking operation and force defendant to join battle on the position taken by plaintiff. Having been thus coerced and having yielded, as he was in duty bound to yield (and because he could not help himself), how

can it be said that, because he made the very best of a bad bargain and tried 'to pluck the flower, safety, from the nettle, danger,' he lost his right to complain of the court's ruling in coercing him?''

In the same opinion, 205 Mo. l. c. 310, our lamented former brother further said:

"Indeed, it was a favorite notion of writers on sprightlier themes than the law, commencing, maybe, with Aristophanes and coming on down through a line of wits, including Butler, Scarron and Goldsmith, that:

" 'For he who fights and runs away,
May live to fight another day;
But he who is in battle slain,
Can never rise and fight again.'

"*Transmitting that notion into allowable law phrase, it might read thus: He who fights and runs away from a position taken on his answer and at the trial, because driven away by the court, may live to fight another day on appeal in the same position, if he marked the spot by an exception; but he who is in battle slain—that is, who selects his place voluntarily, and who legally (speaking in figure) dies in his tracks on his selected theory, can fight no more on appeal, because:* (as once a mortgage, always a mortgage, so) *once fairly dead, always dead.''*

The italics are again ours. In the case before us the defendant, the city of St. Louis, was *driven* away from its position by the trial court, but it "marked the spot by an exception," and has therefore waived nothing. The subject-matter of the exception is here for determination.

The same learned judge (LAMM, J., for Division One of this court), in Houtz v. Hellman, 228 Mo. l. c. 664, further says:

"True, we are indulging an hypothesis that the demurrer was overruled, whereas, in point of fact, it was sustained. Now, on a demurrer to a petition, if sustained, several choices are open to a plaintiff. For instance, he may go out of court; or he may stand on his petition, suffer judgment and appeal; or he may plead over and go on. If he choose the last string to his bow and pleads over, he necessarily waives all questions on the demurrer by abandoning the original petition All issues are then framed on the answer and last petition, and the trial and judgment proceed on such pleadings. *But a defendant, whose defenses are held bad on demurrer, has only Hobson's choice. He takes what is left. He cannot go out of court and thereby avoid a judgment on the merits against him. He was brought in willy nilly at the start and is held in willy nilly to the end. In such predicament, he is entitled to every defense he may have whether legal or equitable. So the code runs. If he is forced to abandon some of his defenses by erroneous adverse rulings of the*

*court on his adversary's demurrer, he may stand on his mutilated answer, and all would agree that, in such event, he waives no right to have the point reviewed. Why, then, does he waive the right to have the point reviewed if he makes the best of it, submit because he cannot help himself, and, putting his best foot foremost, interpose another defense by interlineation in his old answer or by filing another?* It seems clear that, to work out justice, a defendant and plaintiff do not always stand on the same foot in matter of waiver under our code procedure, and that the same rule ought not to be applied mechanically and to each, regardless of the underlying reason of the rule itself.''

He again approves the Cochran case in 113 Mo. l. c. 366.

There may be loose expressions in some cases that seemingly cast some little cloud upon what GANTT, P. J., said in Cochran's case, supra, but the ruling is sound. If, after a motion to strike out one or more of the pleaded defenses, the defendant "marks the spot by an exception" and then proceeds to try the case upon what is left in his answer, there can be no waiver, and upon appeal he is entitled to a review of the ruling upon the motion to strike. Our cases, supra, cover the views of both divisions of this court. This contention of waiver, made by plaintiff in the case at bar, cannot be sustained.

II. Having ruled, supra, that defendant has not waived the right to question the ruling of the court upon the motion of plaintiffs to strike out its plea of *res adjudicata*, we are brought face to face with that question, i. e. the alleged error in striking out this plea of *res adjudicata*.

The present action is in tort. The suit was filed March 18, 1921. The city had previously (September 4, 1918) filed two condemnation suits, one for Garner Avenue and one for Prather Avenue. Plaintiffs herein were made parties defendant to both of these suits. Their property was corner property and therefore bounded upon both of these cross avenues. Prather Avenue is on the west of the property of plaintiffs, and Garner Avenue on the north. In the Garner Avenue suit the plaintiffs herein were awarded damages, which the city paid (amount not shown), and in the Prather Avenue case the city of St. Louis was awarded benefits in the sum of $27.30 against the property of the plaintiffs herein, and these benefits the plaintiffs paid, March 12, 1921. This was just six days before this present suit was filed for damages to this same property as it fronted on Prather Avenue. These final judgments, however, in such condemnation suits, were entered March 24, 1920, or nearly a year before the filing of the instant suit. The tort suit (the present suit) was filed

March 18, 1921. The actual grading and cutting down of Prather Avenue was begun prior to the judgments in these two condemnation suits. For this reason, it is alleged by plaintiffs, that they were entitled to their action in tort, as for trespass, and that for the same reason these judgments, in the condemnation suits, are not *res adjudicata*. These are the contentions of plaintiffs, as best we gather them. We should not omit, however, to state that the files in these two condemnation proceedings, as introduced, do not show that these plaintiffs appeared therein, or filed any claim for consequential damages, or damages of any kind.

The foregoing, we think, suffices to allow a discussion of the propriety of the court's action in striking out the plea of *res adjudicata*. With these facts, and such others (if any) as may become pertinent, we take next the legal situation.

III. We start with the proposition that the action of plaintiffs is for the consequential damages. Such damages could not be recovered at common law. They were *damnum absque injuria.* [Governor v. Meredith, 4 T. R. (D. & E.) 794; St. Louis v. Gurno, 12 Mo. 414; Taylor v. St. Louis, 14 Mo. 20; Hoffman v. St. Louis, 15 Mo. 651; Householder v. City of Kansas, 83 Mo. l. c. 492; Hickman v. City of Kansas, 120 Mo. l. c. 116, and the list of cases cited therein; Clemens v. Ins. Co., 184 Mo. l. c. 53.]

In the Householder case, supra (83 Mo. l. c. 492), HENRY, C. J., said: "Prior to the adoption of the Constitution of 1875, the owner had no redress for such injury to his property as is here complained of, this court having held in a line of decisions, unbroken but in one instance, that it was *damnum absque injuria.*"

In the Clemens case, supra, GANTT, P. J., said:

"Prior to the amendment of the Constitution in 1875, the city in the legitimate exercise of its corporate powers could change the grade of a street or alley by ordinance without being liable for any consequential damages to an abutting owner. [City of St. Louis v. Gurno, 12 Mo. 414; Taylor v. St. Louis, 14 Mo. 20; Hoffman v. St. Louis, 15 Mo. 651; Soulard v. St. Louis, 36 Mo. 546.]

"With the exception of Thurston v. City of St. Joseph, 51 Mo. 510, the decision in St. Louis v. Gurno, was uniformly followed by this court until the adoption of our Constitution of 1875. By Section 21 of Article 2 of that Constitution it is provided that 'private property shall not be taken *or damaged* for public use without just compensation.' After these words, 'or damaged,' were added to this section it was ruled in Householder v. Kansas City, 83 Mo. 488, that a city cannot change the grade of a street to the damage of a lot

abutting upon it without compensation to the owner. [Sheehy v. Railroad, 94 Mo. 574.]"

The one instance mentioned by Chief Justice HENRY, while not named, is Thurston v. City of St. Joseph, 51 Mo. 510, wherein ADAMS, J., uses some language, never thereafter followed, and shortly thereafter repudiated. GANTT, P. J., named the case in the Clemens case, supra. Never, until the Constitution of 1875, could these consequential damages be recovered, if there was no negligence in the performance of the public work, duly authorized.

We go therefore to Section 21 of Article 2 of the Constitution of 1875 to determine the real status of this case. This section has been construed to mean that by it there is given a right of action for consequential damages and a right to recover the same, but that such damages need not be paid in advance of the doing of the duly authorized public work, such as cutting down the grade of a street, or changing the grade of a street in any manner. Thus in Clemens v. Insurance Co., supra, 184 Mo. l. c. 60, GANTT, P. J., after an elaborate and painstaking review of the cases in other states having constitutional provisions such as our Section 21 of Article 2, said:

"In our opinion the Colorado, Illinois, West Virginia and Louisiana courts correctly construe Section 21 of Article 2 of our Constitution, which is found in the Constitutions of those States in practically the same words as in ours, and in holding that where the property of the citizen is not taken and his proprietary rights not disturbed, but the damage to his property is purely consequential, he is not entitled to have the same ascertained and paid before the proposed public work is done, and is not entitled to have the work done in pursuance of valid legislative and municipal authority enjoined until his damages are ascertained and paid, but that his remedy is one at law for damages.

"Having reached this conclusion we hold that whether plaintiff was an abutting owner or not he was not entitled to have the improvements which were being made pursuant to an ordinance of the city and clearly within its charter powers enjoined; that plaintiff has not brought himself within any recognized head of equity jurisdiction and if he has any cause of action it is against the city for damages."

The foregoing language of GANTT, P. J., of Division Two, was quoted, with approval, by Division One of this court in McGrew v. Paving Co., 247 Mo. l. c. 560.

It has, however, further been ruled that this provision of our Constitution is self-enforcing. [Householder v. City of Kansas, 83 Mo. l. c. 495; Hickman v. City of Kansas, 120 Mo. l. c. 117.] In the Hickman case, supra, BRACE, J., for the Court en Banc, said:

"It is also well settled law that this article of the Constitution gives an absolute right and is self-enforcing, and although the Legislature may have enacted no law providing a mode for the ascertainment and payment of the compensation provided for, resort may be had by the party entitled to the right to any common-law action which will afford him adequate and appropriate means of redress. [Householder v. City of Kansas, 83 Mo. 488; Sheehy v. Railroad, 94 Mo. 574; Keith v. Bingham, 100 Mo. 300.]"

This was the unanimous ruling of our Court en Banc at that date, and stands as good law now. But sound as the foregoing propositions are, they do not necessarily dispose of the question in this case. They are but steps in that direction. Self-enforcing constitutional provisions may be supplemented by statutory laws and city charters (which are in effect but statutory laws), which do not contravene the constitutional provision, but which provide means for carrying out such constitutional provision. We have so recently gone over this exact question in the case of State of Missouri ex rel. Lora Elsas v. Missouri Workman's Compensation Commission, 318 Mo. 1004, 2 S. W. (2d) 796, in Court en Banc, that a reference to that case should suffice. In that case we collated and reviewed the authorities on the question, and among other things said:

"But, if these constitutional provisions are self-executing, as the great weight of the cases rule, then the only statutes which could be passed would be those which would facilitate the execution of the constitutional provisions, without conflicting with any of the rights conferred by the Constitution. If there be conflict, the statute rather than the Constitution must fall. In L. R. A. 1917B, pp. 18 and 19, there is an extensive note on this question, and on page 19 the learned annotator thus concisely states the rule:

" 'Notwithstanding a constitutional provision conferring initiative and referendum powers may be self-executing, legislation may be enacted to facilitate the enforcement of the provision, *but such legislation cannot limit or restrict the rights conferred by the constitutional provision.'* (The italics, supra, are ours.)

"To the same effect is the rule stated in 50 L. R. A. (N. S.) 198:

" 'But legislation may be enacted to facilitate the enforcement of constitutional provisions relating to the initiative and referendum even though they are self-executing, and such laws will be obligatory upon the court when intended by the Legislature to be mandatory, so long as they do not curtail the rights reserved, or exceed the limitation specified in the amendment. [Stevens v. Benson, 50 Ore. 269, 91 Pac. 577.]

" 'So it has been held that an enabling act of the Legislature, intended to carry into effect a self-executing constitutional provision conferring the right of initiative and referendum, which proposes

restrictions on proposed legislation not found in the Constitution, is invalid. [Hammett v. Hodges, 104 Ark. 510, 149 S. W. 667.]'

"Other cases to like effect are found in this note. But the rule is simple and plain. If the constitutional provision is self-executing (as is our Section 57 of Article IV), then the legislation must be to facilitate the enforcement of the Constitution, and must not curtail or limit any right created and conferred by the Constitution. If the law undertakes to limit the provisions of the Constitution, such law must fall by reason of a conflict with the Constitution. In addition to the authorities cited, supra, see also State ex rel. Fleck v. Dalles City et al. (Oregon), in Ann. Cases 1916B, l. c. 858; Woodward v. Barbur, 59 Ore. 70."

We were dealing with a self-enforcing constitutional provision as to referendum, but the same rule applies to all self-enforcing provisions of a constitution.

Turning now to this constitutional provision (Sec. 21 of Art. 2 of the Constitution of 1875), it is clear. that one of the real purposes of this provision was to give the right to recover consequential damages to property, where no right had theretofore existed, as our courts had construed previous constitutional provisions, and the common law. No forum for the recovery of such damages was provided in the Constitution of 1875 and no court procedure was pointed out, but this court ruled that where a right was given, the party to whom such right was given (in the absence of any law fixing a forum and a code of procedure), could resort to any common-law remedy which could be found and used. These rulings are sound. The real crux of this case is what laws, or charter provisions, are there which cover this subject, and which are applicable to the city of St. Louis? Of these matters in the succeeding paragraph.

IV. We shall take the applicable statutes first, because, in a broad sense, the Charter of St. Louis cannot contravene a State statute. "Notwithstanding the provisions of this article (Article IX), the General Assembly shall have the same power over the city and county of St. Louis that it has over other cities and counties of this State." [Sec. 25, Art. IX, State Constitution.] "Such charter and amendments (of the city of St. Louis) shall always be in harmony with and *subject to* the *Constitution* and *laws* of Missouri." [Sec. 23, Art. IX, Constitution of Missouri.]

The making of a city charter, under constitutional authority, is a legislative function. [Morrow v. Kansas City, 186 Mo. 685.] This is true whether such charter is made by the General Assembly of the State, by general laws, as in the case of cities of the first, second, third and fourth classes, or by a vote of the people in designated

cities under constitutional provisions, as in St. Louis and Kansas City. In both cases the charters are mere legislative acts. "A charter is the organic law of a city in this State whether it emanates from the General Assembly, or is framed and adopted by the people of the municipality by authority of the Constitution." [Kansas City v. Oil Co., 140 Mo. 1. c. 471.] So that legislative acts (which are the charters of four classes of our cities), are the same in character, as are the special charters voted by the people of cities having authority to adopt special charters under the Constitution. They are each mere legislative acts (one class by the General Assembly, and the other by direct vote of the people, as the legislators, under the authority of the Constitution), and in this sense stand on a par. It is only by reason of constitutional direction that a State law may supersede and thwart a charter provision. These directions (from the Constitution), we have set out, supra, in so far as they apply to the city of St. Louis.

But the charter provisions, in order to avoid conflict, do not have to accord with the State law in mere matters of detail. The charter provisions must not be out of harmony (in the public policy and otherwise) with the general laws of the State, and the public policy therein announced. [Kansas City v. Oil Co., 140 Mo. 1. c. 469.] This case approves what BLACK, J., said in State ex rel. v. Field, 99 Mo. 1. c. 355, whereat it was said:

"While the Constitution says any city having the requisite population 'may frame a charter for its own government,' it also declares that such charter shall be 'consistent with, and subject to, the Constitution and laws of the State,' and, as the law of 1885 is a general law, the claim is made on behalf of respondent, that the charter is subject to that law. The legislative power of the State is vested in a senate and a house of representatives, and, when it is declared that any city of the required population may frame and adopt a charter for its own government, the right thus granted, and the charter adopted, *is subject to legislative control.* The proposition made for relator, that, when any such city has adopted a charter, *it is out of, and beyond, all legislative influence, cannot be sustained.* We held to the contrary in the case of Ewing v. Hoblitzelle, 85 Mo. 76, 77.

"Subject to this superior power of the Legislature, the Constitution accords to any city having the requisite population the right to frame and adopt a charter for its own government, which will supply its peculiar wants. Charters thus adopted will, of necessity, be more or less at variance, and that they will be unlike, in many respects, *is within the contemplation of the Constitution.* It is also within the fair contemplation of the Constitution that a charter thus adopted may embrace the entire subject of municipal government, and be a complete and consistent whole. The enabling act of

March 10, 1887, is in perfect accord *with the spirit of the Constitution*, and it discloses a well-defined purpose to clear the legislative field, and pave the way for the adoption of a charter which will, of itself, present a complete system of local municipal government." The italics are ours.

GANTT, J., in the Oil Co. case, supra, said:

"It is to be observed in this connection that the permission to frame a charter necessarily carries the privilege of providing a system different from that adopted for the State at large, provided it shall not override or collide with the constitutional guarantees and restrictions, and *shall not be out of harmony* with the general laws of the State. It must be borne in mind that the grant of the right to frame a charter of its own would have been utterly without force and meaningless, if the convention which framed the Constitution and the people who adopted it meant that such a charter should be *in all respects exactly like the general charters framed by the general statutes* for the class to which it would have belonged, but for that privilege. We are forbidden by the rules of fair construction to ascribe such a restricted meaning to words in so important a document as the Constitution of the State. As was said in State v. Field, supra: 'Charters thus adopted will of necessity be more or less at variance, and that they will be unlike in many respects, is within the contemplation of the Constitution.' The Constitution of the State is paramount and prohibits private property from being taken or damaged for public use without compensation. It provides, moreover, that such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders. The charter amendment under consideration requires the board to ascertain damages for taking or damaging property for a boulevard to consist of six freeholders, but in so doing it does not conflict with the Constitution in the slightest degree."

In Article XXII, Chapter 72, Revised Statutes 1919, we have a collection of general statutes of the State, which are applicable to the city of St. Louis, on the question of condemnation proceedings, damages to property and the like. These statutes are Sections 8975 to 8981, Revised Statutes 1919, and with one exception each and all of them had their origin (in their substance) in the acts of 1899, Laws of 1899, pages 61 to 108, both inclusive. Section 8975 grants the power to establish the grade of a street and to change the grade, "as often as it may be deemed best for the public interest." Section 8976, Revised Statutes 1919, thus reads:

"When the property owners to be disturbed or *damaged* by the grading, regrading, or other change of any street, alley, avenue, public highway, public place, or any part thereof, are lawfully entitled to remuneration *or damage* under the *Constitution* of the State of Mis-

136

souri, and shall not have waived all right or claim thereto, the ordinance which shall order the grading or regrading of any such street, alley, avenue, public highway or public place, or any part thereof, shall also prescribe and determine the limits within which private property is benefited by the proposed grading or regrading.''

The italics, supra, are ours, as they are in the sections to follow.

Section 8977 is in this language:

''Whenever, in cities that now or may hereafter have a population of three hundred thousand inhabitants or more, property is *disturbed* or *damaged* by the grading, regrading or other change of grade of any street, alley, avenue, public highway, public place, or any part thereof, and the owner or owners or persons having an interest therein are lawfully entitled to remuneration *or damages* under the Constitution and laws of this State, all actions for such damages shall be instituted within one year from the time such work of grading, regrading or change of grade is completed: *Provided, however,* that in all cases where such, cause of action has already accrued, the right to institute such action shall not be barred until six months from the time this section takes effect; *and provided, further,* that in case the city shall institute an action to determine damages and assess benefits growing out of said grading, regrading or change of grade, and shall thereafter dismiss said action, such property owners may institute an action for damages at any time within one year from the time the city shall dismiss its action.''

This section was passed in 1919. [Laws 1919, pages 600 to 601.]

Section 8979, Revised Statutes 1919, fixes the circuit court as the tribunal to determine the cause, and Section 8980, Revised Statutes 1919, prescribes a course of procedure for such a hearing. This latter section specifically says:

''On or before the day next before the day set for the hearing, or before the day to which said cause may have been postponed or continued, as designated in either of aforesaid notices, any person claiming damages by reason of the aforesaid grading or regrading may file or cause to be filed with the clerk of such court a description of the property claimed to be damaged and the interest of the claimant therein. The clerk shall note the filing of every such claim as a part of the record of said cause. If no claim be filed before the day set for the hearing of said cause, or the day to which said cause has been postponed or continued, as above provided, the court, or judge in vacation, shall make an order finding that no such claim has been filed, and thereupon the grading or regrading may be done, *and no claim for damages thereof* shall thereafter be made or considered.''

This section is followed by Section 8981, Revised Statutes 1919, which reads:

"In case any person or persons shall file a claim or claims for damages as mentioned in the preceding section, the circuit court, or judge thereof in vacation, shall retain jurisdiction of the party and subject-matter, *and proceed to cause the damages or compensation* to be ascertained in the manner provided by *the charter of such cities,* or *any law affecting the same.*"

Note the language used. It covers both "damages and compensation." Compensation for property taken, and damages to the remainder of the tract out of which the property was taken, as well as damages to a tract *damaged,* but no part of which was taken. · In other words it is broad enough to cover (1) compensation for property actually taken, (2) damage, if any, to the remainder of the tract out of which the property was taken, and (3) damages to property, no part of which is taken, but which may be damaged by changing the grade of a street. Such are the applicable statutes. The charter applicable provisions, and their effect upon the situation, we take next.

V. Condemnation of property for a public city use has been held to be a municipal purpose and function. [Kansas City v. Oil Company, 140 Mo. 1. c. 472; State ex rel. v. Field, 99 Mo. 1. c. 356-357.] So in both the special city charters (St. Louis and Kansas City), we find provisions for the condemnation of property for street and other public city purposes, and in connection therewith a provision for the assessment of benefits within fixed districts, with which to meet the assessed damages and compensation for property taken or damaged. In other words, we find a combined provision for the exercise of the right to condemn property, or the right of eminent domain, and the right to specially tax property· to meet the compensation and damages occasioned by the condemnation.

In St. Louis, the Charter of 1914 has one whole article (Article XXI) devoted to the subject of condemnation, and the procedure in such cases. There are sixteen sections, and they cover fully the provision for condemnation of property, the determination of the amounts of compensation and of damages, as well as the assessments of benefits with which to pay such compensation and damages. A careful reading of these sections will show that they are not· out of harmony with the statutes we have mentioned in Subdivision IV of this opinion, supra. A few of these charter provisions are pertinent to the questions involved in this particular case.

Section 6 of Article XXI of the charter reads: "At any time after the commissioners file their report the city may pay into court the amount of damages assessed, less benefits, if any, **and thereupon**

it shall be entitled to take possession of or *damage the property,* assuming the lien of all general taxes not then payable on property actually appropriated." (The italics are ours.)

One portion of Section 8, reads: "The court upon approving the commissioners' report shall render final judgment thereon reciting the report and adjudging that the city have and hold the *property petitioned for, describing the same,* for the purposes specified, *upon payment of the damages* less the benefits assessed in each instance."

This same Section 8, further proceeds: "The comptroller may, forthwith, and if no appeal be taken from such final judgment, he shall, at the expiration of the time for such appeal, forward a copy of the judgment to the board of aldermen; and within sixty days after the receipt of such copy, unless an appeal is pending, and, in no event later than sixty days after disposition of all appeals, the board of aldermen shall make an appropriation *for the payment out of the city treasury of the damages assessed in favor of each party* entitled less his benefit as determined by such final judgment, and the city treasurer, on warrant of the comptroller, *shall cause payment* to be made to the several parties entitled or into court for their use, as the case may require." (Again the italics are ours.)

These charter provisions most certainly find support in the laws quoted, supra, and especially under Section 8981, Revised Statutes 1919. which authorizes the court or judge to cause the damages to be assessed and ascertained as provided by the charter of such city. The preceding section (Sec. 8980) seems to contemplate that when the city proceeds to condemn, then the party whose property is damaged should file his claim in the condemnation proceeding, with the clerk of the court having such proceeding before it, and if there is a failure to file, and an order is so entered, the re-grading may be done, and no claim for damages may be filed. Whether vital or not, in this case, we find no evidence of an order being made to the effect that there was no claim for damages filed, but we do find evidence of adjudications upon the same day both as to damages and benefits, and the payment of the one by the city, and the payment of the other by the plaintiffs herein. And all this done before the filing of the instant suit. So in addition to the constitutional provision as to compensation and damages, we have these statutes and charter provisions for consideration. Of these, and their relative effect upon the contention of the plaintiffs herein. in following paragraphs.

VI. We are writing this case somewhat upon principles, rather than upon some of our adjudications, to be noted later. We think

that it has been well ruled, in the cases supra, that Section 21 of Article 2 of the Constitution of 1875 is self-enforcing, and that consequential damages need not be paid before taking the property, under circumstances in the opinions, supra, described. However, we believe that the prime purpose of Section 21 of Article 2 of the Constitution of 1875, was to give the right to recover consequential damages, which right had been denied under the previous constitution, and the court construction thereof, whether rightfully, or wrongfully, we need not now say. The Constitution does not say that these consequential damages shall not be ascertained and paid in advance of the taking of the property. If the granting of the right to have and recover these consequential damages was the real purpose of this section (Sec. 21, Art. 2) of the Constitution, then the time and manner of payment become subsidiary matters, to be fixed by laws enacted in furtherance of a self-enforcing provision of the Constitution. Such laws have been passed, as we have set out, supra. We think that they are laws intended to carry out more fully the real purposes of Section 21 of Article 2 of the Constitution, and that they do not conflict with the Constitution. In other words, they are valid in the furtherance of a self-enforcing provision of the Constitution.. Both these laws, and the provisions of the Charter of 1914 of the City of St. Louis, contemplate and provide for the determination of these *consequential* and other *damages* and *compensation*, in a condemnation proceeding by the city. This proceeding is one in the circuit court—a court of general jurisdiction. All parties interested, either in property to be taken or damaged, or in the payment of benefits within the benefit district, are required to be notified. In other words, they are parties to the proceeding.

This case, in our judgment, turns upon the facts pleaded in the plea of *res adjudicata* rather than upon the rather meager offer of proof. This because, in sustaining the motion to strike out the plea of *res adjudicata*, the court, in effect held, that even if all the pleaded facts were true, yet such facts constitute no defense to the action in tort. In other words, there was no real necessity of making an offer of proof, after the motion to strike had been sustained, and in this case it is clear that the offer of proof is not quite as broad as the plea of *res adjudicata*. Nor was the proof made proper, because a collateral attack upon a judgment.

The motion to strike, in effect, concedes the pleaded facts. This brings us to the real issue in the case, and the cases relied upon by the parties. Of these in the succeeding paragraph.

VII. The plea of *res adjudicata*, which was stricken out by the court. *nisi*, reads:

"And for another and further answer to plaintiffs' amended petition filed herein this defendant avers and alleges that heretofore, to-wit, on the 10th day of April, 1917, the grade of Prather Avenue, where plaintiffs' property fronts or abuts thereon, was duly established by Board Order No. 67 of its Board of Public Service pursuant to authority vested in said Board of Public Service by the Charter and Ordinances of the City of St. Louis; that its Board of Aldermen did enact and its Mayor did, on the 25th day of February, 1918, approve an ordinance, being Ordinance No. 29958, providing for the grading and improving of said Prather Avenue from Manchester Avenue to Mitchell Avenue and at the point where plaintiffs' said property abuts thereon; and after said ordinance was enacted, to-wit, on the 9th day of September, 1918, and within six months after said ordinance went into force and effect, the defendant did, through its City Counselor, institute an action against these plaintiffs and others in the circuit court in and for the city of St. Louis, Missouri, praying that process issue, as by law required, for the defendants therein named, giving them ten days' notice of the time and place when and where said suit and petition would be heard, and for the appointment of commissioners qualified according to law to ascertain, determine, assess and award damage to private property which the respective owners thereof or persons claiming an interest in and to the same may severally sustain by reason of the grading and improvement of the said Prather Avenue to conform to the elevations established by said Board Order No. 78 of the said Board of Public Service for the purpose of making the improvement and doing the work authorized by said Ordinance 29958; that said suit instituted as aforesaid is styled 'The City of St. Louis, plaintiff, v. Joseph H. Foerstel et al., defendants,' being Cause No. 19388, and served upon the plaintiffs herein in the manner required by law; that thereafter all the necessary proceedings in said cause were had to determine what damages, if any, were sustained by plaintiffs herein by reason of the change of grade of the said Prather Avenue at the point where the property described in plaintiffs' petition abuts thereon; that on the 28th day of February, 1919, the said cause was assigned to Division 7 of the Circuit Court of the City of St. Louis, and William J. Studt, Peter Walz and Roman Stranz were thereupon by the court duly appointed commissioners to assess the damages and benefits to the property affected by the grading and improving of Prather Avenue, as aforesaid; that the commissioners viewed the property, notified all the defendants in the case of the City of St. Louis v. Joseph H. Foerstel, and conducted hearings as to the damages and benefits sustained by the said property affected by the grading and improvement of Prather Avenue; that the commissioners thereupon, after conducting the hearing as aforesaid, duly

and properly considered the evidence and statements of the property owners and their duly qualified agents, and on the 9th day of September, 1919, filed in Division No. 7 of the Circuit Court of the City of St. Louis their report as to the damages and benefits to the said property affected by the grading and improving of Prather Avenue, as aforesaid; that on the 24th day of March, 1920, and during the February term, 1920, of said circuit court, final judgment was rendered in said Cause No. 19388; that said judgment was rendered to the same parties and in the same cause of action mentioned in plaintiffs' petition filed herein; that under the said final judgment the city of St. Louis, plaintiff, defendant herein, received the sum of $27.30 from John W. Tremayne and Louisa P. Tremayne, wife of John W. Tremayne, defendants, plaintiffs herein; that on the 12th day of March, 1921, plaintiffs paid the said sum of $27.30 at the office of the Comptroller of the City of St. Louis, satisfaction of which was duly acknowledged by the city of St. Louis on the — day of ———, 1923.

"Wherefore, having fully answered, this defendant prays to be hence discharged with its costs."

To our mind this is a good plea in bar to the action brought by the plaintiffs. The city brought its suit to condemn and the proceedings seem to have been fully in accord with the laws and charter provisions. It had the right to so proceed, and it did proceed as against the property of the plaintiffs. The circuit court entered its judgment, so far as Prather Avenue is concerned, and found that the plaintiffs herein had been benefited rather than damaged by the proceedings as to their property, and this judgment of benefits, the plaintiffs recognized and paid. This, in a proceeding wherein they had notice, and in which they could have litigated their alleged damages had they so desired. They, with notice of the proceeding, at the end thereof, abided the judgment, took no appeal, and paid to the city the benefits assessed against their property, by reason of improving Prather Avenue. Such are the pleaded facts in the plea of *res adjudicata.* Of course if the city had not initiated the proceeding pleaded in the plea of *res adjudicata,* and had proceeded to lower the grade, to the damage of plaintiffs, they had their action in tort. Nor are we saying that if the city proceeded in violation of both statute and charter provisions, to lower the grade prior to payment of damages, an action in tort would not lie. These are not the pleaded facts of the plea of *res adjudicata.* What a full showing of the evidence upon this plea would show, we do not know, and therefore are not passing upon that question. We do rule that the statutory and charter provisions contemplate the assessment and payment of compensation and damages prior to the taking and damaging of property, and

that such statutory and charter provisions are not violative of Section 21 of Article 2 of the Constitution. In other words, such statutory and charter provisions are but legislation (by the General Assembly of the State, and by the people of the city, as legislators of the city, by direct constitutional authority), to further and carry out the terms of a self-enforcing constitutional provision, such as Section 21 of Article 2 of the Constitution of 1875.

Section 8977, Revised Statutes 1919 (Laws 1919, p. 600), only preserves the action in tort conditionally, and in no way interferes with the city's right to proceed, and have adjudicated the compensation, the damages (including consequential), as well as the benefits to the property (by reason of the improvement), in a benefit district to be established. In other words if the city proceeds and fully carries out the statutory and charter provisions, there is no room or place for an action in tort. The only basis for the alleged action in tort, in this case, is, as we have said, the claim that the proffered proof, and the proof, shows a beginning of the regrading of the street prior to the judgment and the payment of damages. It suffices to say of this claim that it is not within the plea of *res adjudicata,* and the city is not required to make a case on facts, with its pleading stricken out. The pleading was stricken out before the case was assigned (by the assignment judge) and reached the trial judge. As said supra, the statute and charter provisions, supra, contemplate that there may come a time in the progress of the city's suit, when there has been a failure of the property owner to file his claim for damages in such suit and after such failure the city may proceed to regrade, *"and no claim for damages thereto shall thereafter be made or considered."* [Sec. 8979, R. S. 1919, partially quoted supra; Sec. 3, Art. XXI, City Charter 1914.] This case, as pleaded in the plea of *res adjudicata,* seems to have proceeded under Section 3 of the charter, supra, which provides in effect, that a party defendant to the suit, shall make a *written demand* for a trial by jury of his claim, "including therein a description of his property to be taken or damaged, and a failure so to do shall be a waiver of the right of trial by jury." This Section 3, thus concludes: "The commissioners shall assess damages for property appropriated *or damaged* for the trial of which a jury is not demanded as aforesaid." Under the plea stricken out these commissioners did not find the property of plaintiffs damaged by the Prather Avenue improvement, but found that it had been benefited, and judgment of the court was so entered, and this judgment of the court the plaintiffs paid. Plaintiffs, according to the plea *stricken out,* were duly served with notice, and afterward paid the judgment, and all this prior to the institution of the tort action herein involved. Even under the charter provisions,

supra, these plaintiffs, having failed to demand a trial by jury, if they did so fail, and failed to claim damages, if they did so fail, would be bound by the report of the commissioners, as the same was approved by the court. [Charter of St. Louis (1914), Article XXI, Sections 4, 5, 6, 7, and 8.] The latter section prescribes in detail the judgment to be entered by the court upon the approval of the report of the commissioners. Benefits (by said judgment), are made liens against the property for ten years. Before discussing the case law relied upon by respondents, we take up the pure question raised by this plea of *res adjudicata.* Under facts stated in this plea in the Prather Avenue proceeding there was a judgment for benefits. Whether right or wrong we are not called upon to determine, because the respondents abided the judgment, and paid the benefits. The Garner Avenue proceeding is not now in the case. We have simply the condemnation proceeding as to Prather Avenue. These condemnation judgments are not subject to collateral attack. [Connors v. St. Joseph, 237 Mo. l. c. 620 et seq.: Leonard v. Sparks, 117 Mo. l. c. 108 et seq.: Burke v. Kansas City, 118 Mo. l. c. 323 et seq.] These cases rule that the usual presumptions accompany these judgments as accompany other circuit court judgments. This is true, it is held, notwithstanding the fact that in such cases, it might be said that such proceedings are under special powers conferred upon circuit courts, rather than under the general powers. [Connors v. St. Joseph, 237 Mo. l. c. 622.] So too, it must be said, that matters which could have, and should have been litigated in this circuit court condemnation proceeding, but were not so litigated, are just as much *res adjudicata,* as if they had been litigated and determined in such proceeding. [Spratt v. Early, 199 Mo. l. c. 500 et seq. See also 15 R. C. L. sec. 438, p. 962. For the later cases see Supplement to 3 R. C. L. p. 510.]

Under this law, how stands this case, under the pleaded facts in the plea of *res adjudicata.* The respondents here, as defendants in the condemnation proceeding, could have urged in that case the very matter now urged. They could have urged that they were damaged by reason of the grading of Prather Avenue. It is immaterial whether they, in fact, urged a claim for damages, if they could have urged such claim (being notified and duly in court in the condemnation proceeding), and did not; the question is *res adjudicata* under the rule in Spratt v. Early, supra. Just as much *res adjudicata,* as if they had made the claim, and lost thereon by having a judgment for benefits against them rather than one for damages for them. This Spratt case had been cited with approval many times since. Failure to appeal from the judgment against them for benefits closes the case for them. They were in court. They cannot dispute the effect of this judgment. They could have even pleaded that

the city was proceeding to take the property before payment of damages, because they say the city graded the street before final judgment. This fact only appears in the evidence offered by plaintiffs, which evidence tended to impeach the judgment in a purely collateral proceeding, and which evidence was improper. But we say if it were a fact it could have been pleaded in the condemnation case. We go one step further. The plaintiffs here, defendants in the condemnation proceeding, actually paid the judgment for benefits. They not only did not appeal, but acquiesced in the judgment by paying the same. They are now estopped from denying the validity of such judgment. This would be true even if the judgment was void. [15 R. C. L. sec. 436, p. 960; Mohler v. Shank, 93 Iowa, 1. c. 280: Richeson v. Simmons, 47 Mo. 1. c. 26-28.] In the Mohler case, supra, the court, after stating the general rule that a void judgment binds no one, says:

"It has often been said that a void judgment is no judgment; that it may be attacked directly or collaterally. Freeman, in work on Judgments, uses this language: 'A void judgment is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one. All acts performed under it, and all claims flowing out of it, are void.' This is true, in a general sense; yet, notwithstanding, a party to such a judgment may voluntarily perform it, by paying the amount adjudged against him, and, when paid, no inquiry will be made as to the validity of the judgment; or he may perform the acts required by a void decree, or accept its benefits, and thereby estop himself from questioning the decree. In other words, a party to a void judgment or decree may be estopped from attacking it either directly or indirectly. Suppose a judgment is for a money demand, justly due, and the record shows that it was rendered without having jurisdiction of the person of the defendant by the service of process upon him, and he voluntarily satisfies the judgment. This is an end of the controversy."

If the facts pleaded in the plea of res adjudicata are true, such plea is an absolute defense to this action.

VIII. The chief reliance of the respondents is the case Bruecker v. City of St. Louis, 246 S. W. 889. This was a action for consequential damages, sounding, of course, in tort, as in the case now before us. Bruecker was one of the defendants in the case of City of St. Louis v. Wallrath, 239 S. W. 110. Both of these cases have given us trouble. Both of them quote and in a way rely upon statutes not applicable to the city of St. Louis, at all. The city of St. Louis (and for that matter Kansas City likewise), is in no sense a city of the first class under

the classification of cities in Missouri. Thus the opinion in the Bruecker case, supra (246 S. W. 1. c. 892) says:

"The only question for our decision on this point is whether a *city of the first class*, in a proceeding to ascertain damages, can deprive a property owner of his independent remedy for consequential damages where the city had proceeded with the improvement before ascertaining and paying damages accruing to property owners. We must answer in the negative." (The italics are ours.)

The Bruecker case was a St. Louis case, just as we have here now. The lower court struck out a plea of a previous pending suit by the city to condemn. This suit was City of St. Louis v. Wallrath, supra. In that Wallrath case, Bruecker and others plead the pendency of the tort case of Bruecker v. City of St. Louis, 246 S. W. 889. The Wallrath case does not make it clear as to whether the condemnation case was brought before the tort case, but we think it is reasonably clear that it was so brought. In the Bruecker case the city's plea makes it clear that the city sued first. Six of the defendants in the Wallrath case pleaded the pendency of the tort case. Bruecker was one of the six. The court in the opinion thus speaks:

"The other defendants did not answer or plead to the petition. A motion to strike out this special plea in the answer being overruled, and plaintiff failing to file a reply to the answer, the court dismissed the petition as against all of the defendants. From this order plaintiff appealed."

The city of St. Louis appealed, and Division Two of this court reversed and remanded the cause. The result reached in that case we think right, but it is hard to tell upon just what statutes the opinion rests. There is an indiscriminate intermingling of the St. Louis charter provisions, statutes pertaining to St. Louis, and statutes pertaining to statutory cities of the first class, and even lower. We can only say that we believe the result reached was correct in Wallrath's case. We cannot say so much for the case of Bruecker v. City of St. Louis, 246 S. W. 889. In this case we have the same indiscriminate intermingling of statutes—some applicable and some not. But the real trouble with the case is that there was a good plea of the pendency of the suit by the city to condemn, at the time the tort suit was brought. The plea was stricken out and the city appealed. The opinion of REEVES, C., sustains the action of the court in striking out the plea of a pending condemnation suit in which, it is alleged, all the damages could be, and should be, determined. The Brueckers (husband and wife) were served with process in the condemnation suit, and should have filed their claim for damages therein, as the city had proceeded first, and had not abandoned such suit. The conclusion reached in this Bruecker case, 246 S. W. 889,

we think is out of harmony with the law, and out of harmony with our opinion herein.

Our case should be reversed and remanded for the reasons we have assigned. It is so ordered.

PER CURIAM:—The foregoing opinion of GRAVES, P. J., in Division One is adopted as the opinion of Court en Banc. All concur.