## UNITED STATES v. CERTAIN LANDS IN JACKSON COUNTY, MO., et al.

### No. 763.

District Court, W. D. Missouri, W. D.

March 5, 1942.

See, also, D.C., 48 F.Supp. 591.

Maurice M. Milligan, U. S. Dist. Atty., and Charles J. Winger, Sp. Asst. U. S. Atty., both of Kansas City, Mo., for the United States.

Henry L. Jost, of Kansas City, Mo., for Harry G. Kyle.

John G. Madden and James E. Burke both of Kansas City, Mo., for Grant Dixon.

Sebree, Shook & Gisler, of Kansas City, Mo., for John O. Orear.

James E. Campbell, of Kansas City, Mo., for intervenor George Harrington, Collector of Revenue for Jackson County, Mo.

Richard Beeson, of Kansas City, Mo., for Missouri Pac. R. Co.

REEVES, District Judge.

This is a proceeding to condemn certain property in Jackson County, Missouri, for the use of the government in its war or military operations. It is not questioned but that an official of the government had the right to proceed as was done to acquire the immediate possession and use of the property involved, as authorized by section 258a, Title 40 U.S.C.A.

By this comparatively recent amendment to the law, the authorities of the government, empowered by law to do so, may acquire lands described in a proper petition by filing a "declaration of taking." In this instance it was done by declaration filed by the Secretary of War. The Secretary complied with the statute by making the required deposit, and thereafter the proceeding for the assessment of damages was made conformable under Section 258, Title 40 U.S.C.A., "as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the State within which such district court is held."

Pursuant to the prayer of the petition, commissioners were appointed to "assess the damages which the defendants, owners of the tracts or parcels of land in said petition described, respectively, may severally sustain by reason of the appropriation of said tracts or parcels of land by the plaintiff for the purposes named in said petition."

It was ordered that the commissioners "shall forthwith view the property of the above designated defendants * * * and forthwith return to the clerk * * * their assessment of damages to the defendants * * *."

The commissioners were duly instructed as to their method of procedure, involving of course a view of the property appropriated. The commissioners were appointed September 5, 1941, and on September 18, 1941, they filed their report, embodying an expression of their judgment as to the amount of damages accruing to each of the property owners by reason of the appropriation of the land owned by them.

The government, on September 22, filed exceptions to the report of the commissioners on Parcels Nos. 14, 15 and 31. Thereafter, the owners of said parcels, in like manner, filed exceptions to the Commissioners' Report. The government, by its exceptions, asserted that the damages assessed were excessive, prayed for a review by the court and for an order disapproving the awards. The government further sought "an order for a new appraisement, award and report by other Commissioners." Each of the excepting property owners prayed for an order granting a "new appraisement of said property by a jury, * * *." The property owners are Harry G. and Bertha B. Kyle, Grant and ·O. J. Dixon, John O. and Mary Orear. In due course the exceptions were presented for consideration.

■ A controversy arose under the law whether the property owners were entitled to an appraisal or assessment of damages by a jury. It was held by the Circuit Court of Appeals, this circuit, in United States v. Hess, 8 Cir., 70 F.2d 142, in a proceeding somewhat similar, that the property owner was not entitled to have his damages assessed by a jury. Other authorities being to the same effect, the parties thereupon orally requested the court to hear evidence on the subject of damages. Such evidence was heard in extenso with the thought that it could be considered as proper procedure would warrant.

The testimony covered the questions of the character, location, qualities of the lands, and such special benefits and values, advantages or disadvantages, as might attach to them. This was supplemented by the opinions of various and sundry persons as experts concerning their estimate of values in the properties appropriated. The values given by witnesses for the property owners tended to show damages more than double those assessed by the commissioners, whereas the testimony on behalf of the government tended to show that the values were less than one-half of that fixed by the commissioners. The variance between the testimony of the plaintiff's and defendants' witnesses was exceedingly wide.

The evidence adduced before the commissioners was not presented to the court, nor was it accessible for review. In fact the parties did not tender it but elected to present evidence independently of that offered to the commissioners. Important questions arise now as to what disposition may and should properly and legally be made of the case.

1. A brief reference to the fundamentals of the right of eminent domain would be helpful. See first the last line of the Fifth Amendment to the national Constitution. Section 21, Article 2, of the Constitution of Missouri, Mo.R.S.A., covers the subject of eminent domain. By recognizing the inherent right of a sovereign to appropriate private property, this section of the constitution puts a restriction upon the exercise of the right by saying that private property shall not be appropriated "without just compensation."

The procedure for estimating such just compensation is outlined by the section; it says: "Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law."

Section 258 of said Title 40 U.S.C.A. hereinbefore set out requires conformity, where the government seeks to appropriate land, to the state practice and procedure. The practice and procedure in the state varies with the particular sovereignty or municipal subdivision seeking the appropriation. The statute most generally employed is that pertaining to condemnation proceedings by corporations. This is found in Article 2, Chapter 8, R.S.Mo.1939, Mo. R.S.A. § 1504 et seq., on the general subject of Civil Procedure.

Section 1508, R.S.Mo.1939, Mo.R.S.A. § 1508, within said Article 2, specifically covers the subject of reports by commissioners and outlines the procedure upon such reports in case of exceptions, as here. It says: "* * * and the court shall make such order therein as right and justice may require, and may order a new appraisement, upon good cause shown."

The statute further says that: "Such new appraisement shall, at the request of either party, be made by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages."

590

Under the authority of United States v. Hess, supra, and many other cases, the parties are not entitled to an inquiry of damages by a jury and they do not ask for it. It was undoubtedly the thought of the parties that the judge in this case sitting as a jury should make an independent appraisal. This is not practicable, as the judge could not view the land as did the commissioners and as commissioners may do. Since neither party is entitled to a jury under the authorities it would follow that the parties could not substitute the judge for a jury, and the judge could not sit as a jury in the case. Moreover, the judge did not undertake to serve in lieu of a jury in the cases. It is not contemplated by the law that the judge should conduct an inquiry of damages, but he may do so only in so far as it would enable him to determine whether the report of the commissioners should be confirmed or rejected.

2. It would follow from the foregoing that, upon the evidence in the case and upon the report of the commissioners, the court either should approve the report of the commissioners or "upon good cause shown" order a new appraisement.

The first question is whether the appraisal submitted should be approved. All of the parties are here claiming that they are aggrieved by the report of the commissioners. If the evidence on behalf of the government is to be believed, then the government is greatly aggrieved. If, on the other hand, the evidence of witnesses on behalf of the property owners is to be believed, then the property owners are equally grievously wronged by the assessment of the commissioners. The report of the commissioners stated: "That in obedience to the order of the said Court the Commissioners proceeded to view the lands hereafter described, heard the evidence and ascertained the just compensation for the taking * * *."

Whether the parties were prepared to present to the commissioners the advantages and disadvantages, the values or lack of values, in the property, could not be ascertained upon this record. The court is confronted with extreme proof on both sides. The court could not, in fairness, arbitrarily approve the report of the commissioners in view of the assertions of the parties and the evidence adduced in the hearing. (The report of the commission-

ers, it should be stated, bore evidence of a conscientious and painstaking effort on the part of capable and honorable men to award just and fair compensation). However, where all the parties complain of the award, it seems proper to accede to their wishes for a new appraisement.

This procedure is contemplated in Guste v. United States, 5 Cir., 55 F.2d 115. The court, however, in that case, found that the commissioners had committed error in their procedure. No such finding is made in this case. I am persuaded that a new appraisal ought to be made solely because it appears that the parties were not as well prepared to present the matter as. they probably will be upon a second appraisal.

3. While the procedure outlined by the Statutes of Missouri is not applicable to a situation of this kind, yet the constitutional provision is self-enforcing. Tremayne v. City of St. Louis, 320 Mo. 120, loc. cit. 139, 6 S.W.2d 935; Barker v. St. Louis County, 340 Mo. 986, loc. cit. 999, 104 S.W.2d 371. This compels the court to follow a procedure that will "conform as near as may be to the practice" in the State court.

In indicating a disposition to order a new appraisal, the court is not unmindful of comments made in Columbia Heights Realty Co. v. Rudolph, 217 U.S. 547, loc. cit. 560, 30 S.Ct. 581, loc. cit. 586, 54 L.Ed. 877, 19 Ann.Cas. 854, where the court said: "The power of the court to review the award by such a jury must, in the very nature of the matter, be limited to plain errors of law, misconduct, or grave error of fact indicating plain partiality or corruption. The jury saw and heard the witnesses; the court did not. The jury went upon and viewed the premises; the court did not. The duty to review did not involve mere error in judgment as to the extent of enhancement in value, for the judgment of the jury manifestly rested upon much which could not be brought before the court. *The jury was expected to exercise its own judgment, derived from personal knowledge from a view of the premises, as well as from the opinion evidence which might be brought before them.*"

As indicated in this case, the court did not review the evidence taken before the commissioners, but heard evidence de novo. The procedure did not contemplate such a course. It is because of the confusion as to the correct procedure that prompts the

order for a new appraisal. If, however, the parties, in recognition of the heavy expense, should be disposed to withdraw their exceptions, I shall be glad to confirm the awards of the commissioners; otherwise, a new appraisal will be ordered.